IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| T & E INVESTMENT GROUP, LLC<br>d/b/a ROBERTS INVESTMENT GROUP<br>and TIMOTHY ROBERTS,<br><br>  Plaintiffs,<br><br>V.<br><br>CHRISTOPHER FAULKNER,<br>BREITLING OIL AND GAS<br>CORPORATION, PARKER HALLAM<br>and DUSTIN RODRIGUEZ a/k/a<br>MICHAEL MILLER,<br><br>  Defendants. | § § § § § § § § § § § § § § § § § | CIVIL ACTION NO.<br>3:11-CV-0724-P |
| FUSION ENERGY, LLC and<br>WILLIAM SCOTT COURT,<br><br>  Plaintiffs,<br><br>V.<br><br>CHRISTOPHER FAULKNER and<br>BREITLING OIL AND GAS<br>CORPORATION,<br><br>  Defendants. | § § § § § § § § § § § § § § | CIVIL ACTION NO.<br>3:11-CV-1558-P |

**PLAINTIFFS' MOTION FOR SANCTIONS AND
<u>MOTION FOR CONTEMPT JUDGMENT AND BRIEF IN SUPPORT</u>**

Plaintiffs move the Court to impose sanctions upon each of the defendants for spoliation of evidence and to hold each of the defendants in contempt for violating the Court's Order to Compel [Doc. 37] signed November 9, 2011 and as grounds therefor would respectfully show the following:

- 1 -

1. *Nature of the Case.*

This case involves claimed violations of the Lanham Act for trademark and trade name infringement, claims for business disparagement, defamation and libel, and cybersquatting.

2. *History of the Relevant Proceedings.*

On August 19, 2011, plaintiffs served on each of the defendants a request to have all of their computers inspected by a forensic computer expert. On September 22, 2011, defendants served blanket objections to this request. On October 11, 2011, plaintiffs filed their motion to compel and brief requesting the Court to order defendants to make their computers available for inspection by a forensic expert. On October 26, 2011, this Court signed its first Order [Doc. 30] compelling this inspection by an independent third-party forensic computer expert. That Order required the parties to confer and determine who the third-party expert would be. The parties subsequently submitted an agreed Order to the Court which was signed by United States Magistrate Judge Jeff Kaplan on November 9, 2011 [Doc. 37] requiring the inspection of all of the defendants' computers used by them in the year 2011 by Lance Fogerty, an agreed independent forensic expert. The inspection was ordered to begin within ten days.

Mr. Fogerty conducted his inspection and on February 24, 2012, submitted his report by hand delivery to the Court and to counsel for defendants. On March 7, 2012, the Court ordered the forensic report to be released to counsel for plaintiffs. Mr. Fogerty's report is attached to this motion as Exhibit "A".

The Fogerty forensic report establishes conclusively that defendants, acting in bad faith, destroyed substantial evidence contained on their computers, after the Court ordered the production of the computers and before they were delivered to Mr. Fogerty.

- 3 -

3. *Highlights of the Fogerty Report.*

Some, but not all, of defendants' computers used by them in 2011 were delivered to Mr. Fogerty by defendants' attorney on November 17, 2011 and November 18, 2011 (Report at 7) These computers are identified on pages 11-13 of the Report.

In his Report, Mr. Fogerty notes as follows:

**Spoliation**
In addition to the examination for case-related materials (documented below), Protegga [Fogerty] was asked to determine if any of the defendants had attempted to spoliate evidence. While this investigation started off about the search for any truth in the claims made by Plaintiffs, it quickly changed to one of spoliation of evidence. (Report p. 13)

Mr. Fogerty then immediately notes regarding Computer BRT-Breitling-PCL-02 as follows: "The NTUser.dat file from the computer BRT-Breitling-PCL-02 shows that the URLs in the TypedURLs registry key were deleted on November 17, 2011, at 9:14 AM." What this means is that all of the evidence regarding cybersquatting on that particular computer, evidence that would identify the internet locations hosting defendants' impermissible libel and Lanham Act violations were attempted to be erased by defendants. To make matters worse, Mr. Fogerty discovered that "In addition to clearing the registry entry listed above on November 17, 2011, PC Optimizer Pro was downloaded, installed and executed on November 14, 2011 and executed again on November 15, 2011." (Report at 13) Mr. Fogerty then describes what PC Optimizer Pro is: "PC Optimizer Pro is a suite of software tools that optimizes a computer's performance by, among other things, cleaning the Windows registry, removing all traces of one's Internet history, and ensuring that files are fully erased and unrecoverable. According to the developer's website (www.pcoptimizerpro.com), the File Shredder tool 'can permanently delete files from your disk without the possibility of them ever being recovered.' A screenshot of the developer's

website detailing the software's features can be found in Figure 1 below." (Report pp. 13-14)

With respect to the computer identified as BRT-Breitling-PCL-03, Fogerty discovered evidence of a software program called "Bulk File Changer" being used on the computer. This particular program allows the user to change the metadata (file attributes and created, modified, and access dates and times) for multiple files at one time. (Report at 15)

Mr. Fogerty found that the Bulk File Changer had also been used on Computer BRT-Breitling-PCD-06 on November 15, 2011, following this Court's Order compelling production.

On pages 15 through 19 of his Report, Mr. Fogerty describes the computers that he discovered that were not produced for inspection by defendants.

Plaintiffs had long known that Faulkner and his wife had used Faulkner's aunt's computer to disseminate their libelous information. This information was discovered by plaintiffs' expert, Louis Scharringhausen, prior to the filing of the lawsuit. That computer was never produced by defendants in this case in direct violation of the Court's Order. (Report p. 36-39)

A computer identified by the computer name "CHRISFAULKNER" was used as recently as November 28 and November 29, 2010 to connect to the 05 Breitling computer, but this computer was never produced. (Report pp. 40-41)

In addition, defendants refused to produce any of their smart phones or computer tablets in direct violation of the Court Order. (Report p. 42)

Mr. Fogerty found evidence of spoliation on every computer he analyzed. (Report p. 61). While a complete review of the Fogerty Report establishes not only evidence of spoliation and contempt of Court, it also provides substantial evidence that defendants were not able to spoliate that supports plaintiffs' claims in this case; however, that is not the subject of this motion.

- 5 -

## Argument and Authorities

1. *Spoliation.*

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001); *and see also West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2nd Cir. 1999), and *Micron Technology, Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011). In this particular case, the spoliation by defendants of information on their computers, as discovered by the third-party forensic expert, occurred well after this lawsuit had been filed. More importantly, it occurred after the Court ordered the defendants to produce such computers for inspection.

District courts have the "inherent power to control litigation," *West*, 167 F.3d at 779, by imposing sanctions appropriate to rectify improper conduct by litigants. *See Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3rd Cir. 1994). Such sanctions may include "dismissal". *Micron Technology, Inc.* at 1326. Obviously, then, it can include the power to strike a defendant's pleadings, the relief we suggest in this motion. In order to impose the very harshest remedy, the district court must find that the guilty party disposed of evidence in bad faith that resulted in prejudice to the judicial process.

"To make a determination of bad faith, the district court must find that the spoliating party 'intended to impair the ability of the potential defendant to defend itself.'" *Micron Technology* at 1326, citing *Schmid*, at 13 F.3d at 80. *See also Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008) ("A document is destroyed in bad faith if it is destroyed 'for the purpose of hiding adverse information.'") [citation omitted]; *In Re Hechinger Inv. Co. of Del., Inc.*, 489 F.3d 568, 579 (3rd Cir. 2007) (noting that bad faith requires a showing that the litigant "intentionally destroyed documents that it knew would be important or useful to [its opponent] in defending against [the] action"); *Anderson v.*

*Cryovac, Inc.*, 862 F.2d 910, 925 (1st Cir. 1988). "The fundamental element of bad faith spoliation is advantage-seeking behavior by the party with superior access to information necessary for the proper administration of justice." *Micron Technology* at 1326.

In order to find prejudice to the opposing party, that party must show that the spoliation "materially affects the substantial rights of the adverse party and is prejudicial to the presentation of its case." *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 504 (4th Cir. 1977). But to satisfy that burden, a party must only "come forward with plausible, concrete suggestions as to what [the destroyed] evidence *might have been*. *Micron Technology* at 1328 citing *Schmid*, 13 F.3d at 80. "If it is shown that the spoliator acted in bad faith, the spoliator bears the "heavy burden" to show a lack of prejudice to the opposing party because "[a] party who is guilty of . . . intentionally shredding documents . . . should not easily be able to excuse the misconduct by claiming that the vanished documents were of minimal import." *Micron Technology* at 1328, citing *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 925 (1st Cir. 1988).

In *Arista Records, LLC v. Tschirhart*, 241 F.R.D. 462, 466 (W.D. Tex. 2006), the Court entered a default judgment against the defendant that used disk wiping software to destroy electronic information, the exact same conduct committed by defendants in our case. The intentional bad faith spoliation of evidence also empowers the district court to award attorney's fees in response. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-56 (1991). In *Ashton v. Knight Transportation, Inc.*, 772 F.Supp.2d 772, 801 (N.D. Tex. 2011), Judge Boyle describes the available sanctions for culpable spoliation of evidence resulting in prejudice to the opposite party:

> These sanctions include awarding attorney's fees, deeming certain facts admitted, giving an adverse inference instruction to the jury, striking pleadings, entering a default judgment, and dismissing the case entirely. *Rimkus*, 688 F.Supp.2d at 618-19; *Duque v. Werner*

*Enters., Inc.*, No. L-05-183, 2007 U.S. Dist. LEXIS 23473, 2007 WL 998156, at *2-3 (S.D. Tex. March 30, 2007).

Judge Boyle also exhaustively analyzes the law of spoliation and its elements, *Ashton* at 779-806, and in that case chose the sanction of striking the defendants' pleadings and defenses to liability.

2. *Contempt.*

In this case, the forensic computer expert discovered that defendants had failed to produce several computers that they had been ordered to produce by this Court. (Report pp. 15-19, 36-39, 40-41, 42)

Courts have inherent power to enforce compliance with their lawful orders through civil contempt. *See Shillitani v. United States*, 384 U.S. 364, 370 (1966). In order to obtain civil contempt relief, the moving party must establish by clear and convincing evidence four elements:

(1) The existence of a valid decree of which the alleged contemnor had actual or constructive knowledge;

(2) That the decree was in the movant's favor;

(3) That the alleged contemnor by his or her conduct violated the terms of the decree and had at least constructive knowledge of such violations; and

(4) That the movant suffered harm as a result.

*See Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000).

**(a) Element One: The existence of a valid and specific order.**

On October 26, 2011, this Court signed an Order [Doc. 30] requested by plaintiffs to compel resisting defendants to submit all of their computers that they had used during the year 2011 to a forensic expert for examination. Subsequently, the parties submitted an Order containing their joint selection of Lance Fogerty which specifically

required "(a) a third-party independent computer forensic expert jointly selected by the parties shall be permitted by defendants to have access to all of the computers used by the defendants during the year 2011, wherever located, for examination of their hard drives . . . ." [Doc. 37]

### (b) The Second Element: That the order be in movant's favor.

The Orders were based upon movants' previous motions to compel the defendants to produce evidence and are obviously in the movants' favor.

### (c) Element Three: Defendants' conduct violated the terms of the Order.

By failing to do exactly what the Order required, *i.e.*, make all of their computers available to Mr. Fogerty for inspection, defendants clearly violated the terms of the Court's Order.

### (d) Fourth Element: Harm to movants.

Obviously, the failure to produce evidence that may have been favorable to the plaintiffs is harmful to the plaintiffs' case and to the administration of justice.

Defendants should be held in civil contempt and sanctions should be administered by the Court as are appropriate. Those sanctions should include ordering, again, that defendants make all of their computers available to Mr. Fogerty, requiring defendants to pay the cost of the entire Fogerty report as opposed to splitting it with the plaintiffs, and awarding plaintiffs reasonable attorney's fees for the entire exercise of making the motion to compel and filing this motion.

For the foregoing reasons, plaintiffs respectfully urge the Court to grant these motions and to impose appropriate sanctions for bad faith spoliation of evidence and for contempt of Court.

Respectfully submitted,

_____
BEN L. KRAGE                                    (# 11700000)
MARK A. HENDRIX                         (# 09460500)
KRAGE & JANVEY, L.L.P.
2100 Ross Avenue, Suite 2600
Dallas, Texas 75201
214-397-1914
Facsimile: 214-220-0230
Email: bkrage@kjllp.com
           mhendrix@kjllp.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF CONFERENCE

I have conferred with counsel for defendants who opposes these motions.

_____
BEN L. KRAGE

## CERTIFICATE OF SERVICE

I certify that on the 3rd day of May, 2012, this document was served in compliance with Rule 5, FED. R. CIV. P., on all other parties by CM/ECF.

_____
BEN L. KRAGE

cf\RobertsInvGroup-Mtn-Sanctions