**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **T & E INVESTMENT GROUP LLC,** | § | |
| **d/b/a Roberts Investment Group, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **No. 11-CV-0724-P** |
| | § | **(Consolidated with No. 3:11-CV-1558-P)** |
| **CHRISTOPHER FAULKNER, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

**ORDER ACCEPTING FINDINGS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

On July 5, 2013, the assigned Magistrate Judge issued Findings, Conclusions, and Recommendation ("FCR") in which he recommended that the Court grant in part and deny in part Plaintiffs' Motion for Sanctions and Motion for Contempt Judgment ("Motion for Sanctions") (doc. 53), sanction Defendants by instructing the jury with respect to an adverse inference due to spoliation of evidence, and monetarily sanctioning Defendants in an amount of $27,500. (*See* FCR, doc. 110.) Defendants timely objected to the recommendation. (*See* Defs.' Obj'n to Report & Recommendation [hereinafter Obj'ns], doc. 111.) They urge the Court to reject the FCR. (*Id.* at 11-12.) Plaintiffs have not responded to the objections. For the reasons that follow, the Court accepts the FCR as supplemented herein, after reviewing all relevant matters of record, including the FCR, the filed objections, and the transcripts of two evidentiary hearings, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3).

**I.      Authority of Magistrate Judge and Standard of Review**

Section 636(b)(1)(B) of Title 28 of the United States Code grants magistrate judges authority to issue findings and recommendations regarding dispositive matters in cases referred to them. The

statute provides for the filing of written objections to proposed findings and recommendations and for a de novo determination of matters "to which objection is made." Objections asserted in accordance with this provision serve "to narrow the dispute" and enable district judges "to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 & n.6 (1985). And § 636(b)(1) "does not on its face require any review at all . . . of any issue that is not the subject of an objection." *Id.* at 149. Nevertheless, "while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard." *Id.* at 154.

Rule 72(b)(3) of the Federal Rules of Civil Procedure likewise provides for a de novo determination of "any part of the magistrate judge's disposition that has been properly objected to." Rule 72(b)(2) requires the objecting party to file "specific written objections" and grants other parties fourteen days to respond to such objections. While Rule 72(b) does not facially require any review in the absence of a specific objection, the advisory committee notes following its adoption in 1983 state: "When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."

Credibility issues do not require the district court to hold a de novo hearing, but they do require consideration of the actual testimony, not merely a review of the findings and recommendations. *Hernandez v. Estelle*, 711 F.2d 619, 620 (5th Cir. 1983). Observing witnesses is crucial to adequately determine their credibility. *Louis v. Blackburn*, 630 F.2d 1105, 1110 (5th Cir. 1980). Such observation "may be accomplished either by the district judge accepting the determination of the magistrate after reading the record, or by rejecting the magistrate's decision and coming to an

independent decision after hearing the testimony and viewing the witnesses." *Id.*

Consistent with § 636(b)(1) and Rule 72(b)(3), the Court reviews the findings and recommendation of the Magistrate Judge in this case.  It "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *accord* 28 U.S.C. § 636(b)(1).

## II.    Background

In response to a motion to compel filed by Plaintiffs T & E Investment Group LLC and Timothy Roberts (hereinafter "Plaintiffs"), the Court ordered on November 9, 2011, that a "third party independent computer forensic expert jointly selected by the parties shall be permitted by defendants to have access to all of the computers used by the defendants during the year 2011, wherever located, for examination of their hard drives" and identified Lance Fogarty, as that expert. (*See* Order Mot. Compel, doc. 37.)  Following a forensic examination by Fogarty, Plaintiffs moved for sanctions against Defendants Christopher Faulkner, Breitling Oil and Gas Corporation, Parker Hallam, and Dustin Rodriguez (hereinafter collectively referred to as "Defendants") for spoliation of evidence and to hold each defendant in contempt for violating the November 9, 2011 order.  (*See* Mot. Sanctions at 1.)  Plaintiffs provided a Confidential Computer Forensic Examination Report ("Original Report") from Fogarty to support claims of spoliation of evidence on three computers (BRT-Breitling-PCL-02 ("PCL-02"), BRT-Breitling-PCL-03 ("PCL-03"), and BRT-Breitling-PCD-06 ("PCD-06")) and claims that Defendants withheld various computers from production, including one identified as Alienware.  (*See* Orig. Report, attached as Ex. A to Mot. Sanctions, at 13-41.)

The Court later ordered Defendant Faulkner to produce five previously unproduced computers to Fogarty for forensic examination.  (*See* Order of June 8, 2012, doc. 62.)  The Court also set

3

a June 29, 2012 deadline for Plaintiffs to supplement their motion for sanctions.  (*Id.*)  After that deadline passed without supplementation, the Court limited the scope of the motion for sanctions to spoliation issues related to the three computers identified by Fogarty and set deadlines for further briefing on the motion.  (Order of July 5, 2012, doc. 65.)  Upon the filing of a response (doc. 66) and a reply brief (doc. 67), the motion for sanctions became ripe for ruling.  On January 9, 2013, the Court referred the motion to the assigned magistrate judge for hearing, and if necessary, report and recommendation.  (*See* Order of Jan 9, 2013, doc. 74.)

The Magistrate Judge held a hearing on the motion on May 2, 2013.  (*See* Electronic Minute Entry, doc. 102.)  Fogarty testified that Defendant Faulkner created a new profile on PCL-03, copied data to it, and used a bulk file changer to alter the data in an apparent "attempt to make it look like that was his computer that he used all the time."  (Tr. Hearing of May 2, 2013, [hereinafter Tr.] at 21.)  Fogarty testified that he believed that someone used the bulk file changer to hide the existence of a computer that had not been produced in this case.  (Tr. at 27.)  He connected the missing computer to the use of the bulk file changer as follows:  "And we clearly have a computer that was used throughout the entire year of 2011 up to and including the date of the Court order, and that computer has never been produced, and instead we got a computer that had falsified information on it pretending to be Mr. Faulkner's computer."  (Tr. at 32.)  He identified four computers, including the one identified as Alienware, that he believed were used in the Faulkner home in 2011, but not produced in this case.  (Tr. at 54-55.)

Faulkner[1] testified that he looked for the Alienware computer, which is a brand owned by

---

[1]Faulkner is CEO of Defendant Breitling Oil and Gas.  (Tr. at 58-59.)  He testified in both his individual capacity and as corporate representative of Breitling Oil and Gas.  (Tr. at 59.)

Dell, but he only found and produced two that were not identified by Fogarty. (Tr. at 71-72.) When asked whether the Alienware computer was used at his home, Faulkner expressed uncertainty, but firmly explained that the computer used an IP address provided by Covad while his internet provider was Megapath. (Tr. at 72-74.) He testified that he does not possess the Alienware computer sought by Fogarty even though Fogarty reported that the computer securely connected to Faulkner's wife's computer the day after the Court ordered him to produce all computers used in 2011. (Tr. at 81-84.) He also testified that he copied files to PCL-03 and used the bulk file changer to attempt to change the files to read only so that they could not be deleted. (Tr. at 61-63, 86-91, 93-94.) Although his wife could still access the files, he "set them as read only." (Tr. at 63.) He characterized the copied files as "a multitude of things related to our investor files, a lot of photos, PDF's, Word documents, just standard stuff that we update our investor base with." (*Id.*)

On May 3, 2013, Fogarty initiated contact with staff of the Magistrate Judge to informally inform the Court of certain conclusions that Fogarty had reached regarding the veracity of Faulkner's testimony at the May 2, 2013 hearing, and the staff later directed Fogarty to submit the substance of that communication in writing. (*See* Order of May 9, 2013, doc. 103.) On May 8, 2013, Fogarty delivered a copy of a second Computer Forensic Examination Report ("Supplemental Report") dated May 7, 2013. (*See id.* at 2.) In the Supplemental Report, Fogarty stated that Faulkner made false and misleading statements to the Court regarding (1) Covad and Megapath (they had merged in September 2010 and Covad was merely a brand of Megapath), (2) the nature of the files copied to PCL-03 (only twenty files belonged to Breitling Oil and Gas – .06 percent of the total data transferred), and (3) his use of the bulk file changer (no files changed to read only, but dates of the files were changed). (Supp. Report, doc. 109, at 1-5.)

Following receipt of the supplemental report, the Magistrate Judge scheduled oral argument for May 16, 2013, (*see* Order of May 9, 2013), and ultimately held a second evidentiary hearing regarding the motion for sanctions on June 3, 2013, (*see* Electronic Minute Entry, doc. 107). At this second hearing, Fogarty testified that altering the data on PCL-03 is relevant because "it was utilized to hide a computer that likely does contain information relevant to this case," namely the Alienware computer. (Tr. Hearing of June 3, 2013, [hereinafter Tr. Vol. 2] at 17.) He further testified that, from his forensic examination, "we know [the Alienware computer] was in the Faulkner's home and we know it connected and made a secure connection to the Faulkner home computer or [the wife's] computer in this case." (*Id.* at 18.) He also testified that Faulkner had sent e-mails from the Alienware computer for years and that e-mails from Faulkner's wife's e-mail account were also sent from that computer. (*Id.* at 18-19, 42.) He viewed the use of the bulk file changer as a clear intent to hide the Alienware computer and that no files were converted to read only. (*Id.* at 27-28.)

On July 2, 2013, the assigned Magistrate Judge ordered that the May 7, 2013 report be filed. (*See* Notice of Filing of Supp. Report of Lance Fogarty, doc. 109.) Three days later, the Magistrate Judge issued the FCR that is now before the Court. The Magistrate Judge noted that Fogarty's initial "report found that Defendants had spoliated data on several computers." (FCR at 2.) The Magistrate Judge recognized that the spoliation issues were limited to the three computers identified in the July 5, 2012 order. (*Id.* at 3 and 13 n.2.) And he found that Faulkner's use of a bulk file changer on PCL-03 and transferring large amounts of data from an external hard drive to that computer satisfied the elements of sanctionable spoliation under applicable law. (*Id.* at 5-18.) More specifically, the Magistrate Judge found that Defendant Faulkner manipulated data on PCL-03 to avoid producing the Alienware computer. (*Id.* at 13-14 & n.2.) In finding that Plaintiffs were prejudiced by the spoli-

ation of evidence, the Magistrate Judge addressed an objection raised by Defendants "that a request for sanctions for a failure to turn the Alienware computer over to Fogarty in response to the 11/9/11 Order is beyond the scope" of the motion for sanctions as limited by the Court.  (*Id.* at 17-18.)  The Magistrate Judge was

> of the view that that failure is not itself the sanctionable spoliation but is a related circumstance that cannot be disentangled from Defendants' spoliation of PCL-3 (a computer clearly at issue on Plaintiffs' Motion for Sanctions) – and need not be, for present purposes, where Defendants had ample opportunity to present evidence and cross-examine Fogarty regarding the Alienware computer's existence, significance, and location at both evidentiary hearings.

(*Id.* at 18.)  The Magistrate Judge concluded that the sanctionable spoliation of evidence by Defendants warrants an adverse inference instruction and monetary sanctions.  (*Id.* at 18-20.)

## III.    Objections

Defendants assert sixteen enumerated objections to the FCR.  (*See* Obj'ns at 3-8.)  They primarily object that many portions of the FCR (1) exceed the scope of the motion for sanctions and the Court's order limiting that motion to spoliation issues related to the three specified computers and (2) violate their rights to due process and adequate notice.  (*See id.*)  They also specifically object that the recommended monetary sanction is excessive.  (*See id.* at 7-8.)  And they assert other objections that the Court considers separately after the three identified ones.

### A.    <u>Exceeding Scope of Motion</u>

In their first objection, Defendants contend that the Magistrate Judge finds spoliation from facts and circumstances that exceed the scope of the motion for sanctions and the July 5, 2012 order that limits the motion to spoliation issues related to three computers.  (Obj'ns at 3.)  They object that any issue regarding the Alienware computer exceeds that scope.  (*Id.*)  In Objections 2, 3, 4, 6, 7, 9,

11, and 12, they argue that particular findings or conclusions of the Magistrate Judge exceed the scope of the motion. (*Id.* at 4-7.)

Courts generally decline to decide questions that exceed the scope of a filed motion. *Mid-Continent Cas. v. Eland Energy, Inc.*, No. 3:06-CV-1576-D, 2010 WL 610713, at *4 (N.D. Tex. Feb. 22, 2010). But "spoliation" is broadly defined as the "destruction or material alteration of evidence or . . . the failure to preserve property for another's use as evidence in pending or reasonably fore-seeable litigation." *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 799 (N.D. Tex. 2011) (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) and citing Black's Law Dictionary 1531 (9th ed. 2009)). And when a party has made allegations of sanction-worthy spolia-tion, the Court must consider whether there is "a duty to preserve the information, a culpable breach of that duty, and resulting prejudice to the innocent party." *Id.* at 800. Consequently, resolving a spoliation motion is

> fact intensive, requiring the court to assess when the duty to preserve commenced, whether the party accused of spoliation properly complied with its preservation duty, the degree of culpability involved, the relevance of the lost evidence to the case, and the concomitant prejudice to the party that was deprived of access to the evidence because it was not preserved.

*Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 508 (D. Md. 2009). In some situations, the courts must also consider whether evidence has been destroyed or materially altered. The culpability element, furthermore, may involve considering whether actions were taken in bad faith. *Ashton*, 772 F. Supp. 2d at 800-01.

Given the fact intensive nature of resolving a spoliation motion, limiting the motion for sanctions to spoliation issues related to three specific computers does not preclude the Court from considering facts and circumstances pertinent to those issues. With respect to PCL-03, the motion

8

for sanctions alleges use of a bulk file changer to allow the user to change metadata for multiple files at one time. (Mot. Sanctions at 4.) Defendant Faulkner admitted that he copied files to PCL-03 and used the bulk file changer to attempt to change attributes of those files. (Tr. at 61-63, 86-91, 93-94.) According to the independent forensic expert, the alteration by Faulkner is relevant to this case because it shows an attempt to hide a failure to produce the Alienware computer. (Tr. Vol. 2 at 17.) That relevancy makes the alteration material within the meaning of the spoliation definition.

The Magistrate Judge properly found that manipulating data on the PCL-03 computer to avoid production of the Alienware computer or other relevant evidence was within the scope of the motion as limited by the Court. Despite the limited scope of the motion for sanctions, the Magistrate Judge properly found testimony from Defendant Faulkner not credible. Faulkner materially altered the contents of PCL-03 by transferring data to it and then using the bulk file changer to change aspects of the transferred files. Such conduct clearly falls within the scope of the spoliation issues raised in the motion for sanctions. (*See* Mot. Sanctions at 4 (discussing use of the bulk file changer on PCL-03).)

Once the Magistrate Judge found the material alteration, he properly considered the three elements set out in *Ashton* to determine whether the alteration constituted sanctionable spoliation. Defendants unquestionably had a duty to preserve the evidence contained within their computers, including PCL-03 and the Alienware computer, no later than November 9, 2011, when the Court ordered them to provide Fogarty access to all of their computers used in 2011. On November 15, 2011, Faulkner created a user profile "Chris" on PCL-03 and copied data from an external hard drive to that computer. (*See* Orig. Report at 15 (showing dates); Tr. at 61-63, 86-91, 93-94 (showing that Faulkner made the changes).) The new user profile was manually given a creation date of May 15,

2009, two years before the computer was even purchased.  (Orig. Report at 15; Tr. at 21-24.)  On November 18, 2011, Faulkner used the bulk file changer to alter aspects of the copied files.  (*See* Supp. Report at 4 (showing date); Tr. at 61-63, 86-91, 93-94 (showing that Faulkner was the computer user).)  The files were not changed to read-only as stated by Faulkner; instead, their dates were manually changed to reflect a date of 2009.  (*See* Supp. Report at 4.)  Considering the totality of the circumstances, the Court agrees that Faulkner acted in bad faith when he materially altered PCL-03 to make it appear that he had used that computer for a number of years so as to conceal the Alienware computer from production.  Additionally, the totality of the circumstances support a reasonable conclusion that the Alienware computer contained relevant information that would have aided Plaintiffs in supporting their claims.  The evidence supports finding that Defendants have not produced the Alienware computer even though the day after the November 9, 2011 court order, that computer made a secure connection to PCL-03 using an IP address within the same subnet and wireless network ID as PCL-03.  This evidence is relevant to whether Plaintiffs were prejudiced by the material alteration of the contents of PCL-03.  Plaintiffs have carried their burden to show that the bad faith spoliation of PCL-03 by Defendant Faulkner has prejudiced them.

For the foregoing reasons, the Court overrules all objections that the Magistrate Judge exceeded the scope of the motion for sanctions as limited by the July 5, 2012 order.[2]

---

[2]In Objection 7, Defendants object that the following finding or conclusion of the Magistrate Judge exceeds the scope of the motion for sanctions:

> While the failure to turn that computer over as required by Judge Kaplan's 11/9/11 Order is not, standing alone, a basis for sanctions on Plaintiffs' motion, the evidence shows that PCL-3 was manually altered, using a bulk file changer, to make the "Chris" profile appear to have been created in 2009 and that certain files were likewise manually altered.

(Obj'ns at 5.)  They then "further object" that while this finding or conclusion may constitute evidence supporting a bad faith finding related to a failure to produce the Alienware computer, "it does not support a finding that actionable spoliation occurred on [PCL-03]."  (*Id.*)  To the extent this "further" objection differs from Defendants' exceeding-the-scope objection, the Court also overrules it.  The finding/conclusion of the Magistrate Judge properly relates to the culpability of Defendants and the bad faith of Defendant Faulkner relative to the sanctionable spoliation.

B.      **Due Process and Notice**

For fourteen of the sixteen enumerated objections, Defendants also object on grounds of due process and inadequate notice.  (*See* Obj'ns at 3-8.)  These objections primarily stem from the contention that the Magistrate Judge exceeded the scope of the motion for sanctions.  Having found that the Magistrate Judge did not exceed the scope of that motion, the Court finds the contention to be an insufficient basis for any objection based on due process or inadequate notice.

Furthermore, at the first hearing before the Magistrate Judge, Defendants argued that some evidence exceeded the scope of the motion for sanctions.  (Tr. at 9.)  Plaintiffs argued that the evidence related to considering potential sanctions.  (*Id.*)  The Magistrate Judge allowed Plaintiffs to present the evidence subject to a running objection that Defendants lacked notice.  (*Id.* at 9-16.)  By the time the Magistrate Judge conducted the second hearing a month later, Defendants were well aware of Plaintiffs' arguments that the spoliation of PCL-03 was connected to the failure to produce the Alienware computer.  Defendants had ample opportunity to present argument and evidence to rebut or contest the Plaintiffs' arguments and evidence.  There appears to be no merit to the objections based on due process or inadequate notice.

Objections based on due process and inadequate notice appear inappropriate, furthermore, when objecting to the Magistrate Judge's recommendation in this case.  As already mentioned, Defendants had two opportunities to present evidence and cross-examine witnesses.  Furthermore, the recommendation itself provides sufficient notice of the findings, conclusions, and recommendations of the Magistrate Judge.  It also informs the parties that they may object to any part of the FCR within fourteen days.  (*See* FCR at 23.)  Upon receiving timely objections to a recommendation, the Court conducts a de novo review or determination of those parts of the FCR to which specific object-

ions have been asserted.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3).  Because the Court conducts a de novo review or determination, objecting parties have another adequate opportunity to present whatever they want the Court to consider.

For all of these reasons, the Court overrules the due process and notice objections.

### C.  Excessive Monetary Sanction

Through Objection 16, Defendants object that the $27,500 monetary sanction is excessive because "the majority of spoliation allegations made by Fogarty do not meet the legal standard [for] spoliation of evidence and/or were not pursued by Plaintiffs as sanctionable." (Obj'ns at 7-8.)  The Magistrate Judge, however, specifically considered that some allegations of spoliation do not constitute actionable spoliation under the law.  (*See* FCR at 20-23.)  He also considered that some alleged sanctionable conduct was no longer at issue.  (*See id.* at 22-23.)  Despite such knowledge, the Magistrate Judge determined that $27,500 was an appropriate monetary sanction for the conduct found sanctionable.  As recognized by the Magistrate Judge, the choice of sanction is essentially a matter of the Court's sound discretion.  (*See id.* at 18 (citing *Ashton*, 772 F. Supp. 2d at 801).)  On de novo review, the Court determines that $27,500 is an appropriate monetary sanction for the same reasons stated by the Magistrate Judge.  The Court overrules Objection 16.

### D.  Other Objections

Although the preceding sections cover most of the specific asserted objections, Defendants also specifically objects to a material and substantial altering of the burden of proof in Objection 12. (*See* Obj'ns at 7.)  Objection 12 also appears to contain an unspecified objection to one finding or conclusion of the Magistrate Judge.  (*See id.* at 6-7.)  And Defendants appear to object in Objections 5, 8, 10, 13, and 14 to specific findings or conclusions of the Magistrate Judge on grounds other than

due process and inadequate notice although those objections are the only ones specifically asserted. (*See id.* at 4-7.)  Lastly, Defendants assert Objection 15 without stating any basis for it.  (*See id.* at 7.)

Objection 12 relates to the prejudice section of the FCR.  To put it in proper context the Court quotes it in full:

> Defendants object to the finding and/or conclusion that "the undersigned is of the view that that failure is not itself the sanctionable spoliation but is a related circumstance that cannot be disentangled from Defendants' spoliation of PCL-3 (a computer clearly at issue on Plaintiffs' Motion for Sanctions) – and need not be, for present purposes, where Defendants had ample opportunity to present evidence and cross-examine Fogarty regarding the Alienware computer's existence, significance, and location at both evidentiary hearings.["]  Defendants further object to the indictment for failing to present evidence and cross-examine Fogarty regarding the Alienware computer's existence, significance, and location at both evidentiary hearings on the ground that it exceeds the scope of Plaintiffs' Motion for Sanctions and Magistrate Judge Kaplan's July 5, 2012 Order and materially and substantially alters the burden of proof.  Defendants were not on notice that the Alienware computer would be the subject of the hearing on Plaintiffs' Motion for Sanctions; but, in fact, were expressly put on notice that the Alienware computer's existence, significance, and location was not the subject of the hearings and could not support the imposition of sanctions for allegedly spoliating evidence.  Defendants further object on due process and inadequate notice grounds.

(Obj'ns at 6-7 (citation omitted).)  This objection asserts three specific objections: (1) exceeding scope of the motion for sanctions, (2) altering burden of proof, and (3) due process and notice. Because the first sentence of Objection 12 is not connected to any particular objection and because Defendants state that they "further object" on the three specific grounds, it appears that they also assert some unspecified objection to the finding or conclusion quoted in the first sentence.

The Court has already overruled the objections based on the scope of the motion, due process, and notice.  It now overrules the objection that the Magistrate Judge altered the burden of proof.  The Magistrate Judge properly placed the burden on Plaintiffs to show that a sanction for

13

spoliation was warranted. (*See* FCR at 10 (quoting *Ashton*).) The Magistrate Judge found that Plaintiffs carried their burden to show prejudice. (*Id.* at 17.) And while addressing an objection that a request for sanctions based on a failure to produce the Alienware computer to Fogarty is beyond the scope of the motion for sanctions, the Magistrate Judge stated the view quoted above. (*Id.* at 17-18.) Stating that view does not alter the burden of proof. It instead provides reasons for not disentangling the related failure to produce the Alienware computer from the specific spoliation of PCL-03 placed at issue by the motion for sanctions. As already discussed, that failure undoubtedly relates to the prejudice issue that arises from the spoliation of PCL-03. Upon finding that a party has carried its burden, furthermore, judges may note an opportunity to present evidence and cross-examine witnesses by the other party without altering the burden of proof.

The first sentence of Objection 12 may assert some other objection. But to the extent it does so, the objection is conclusory and "fails to meet the Rule 72 requirement of a specific objection." *See Harbolt v. Quarterman*, No. 3:06-CV-1964-N-BH, 2009 WL 3496290, at *1 & n.1 (N.D. Tex. Oct. 28, 2009) (recognizing that "[c]onsistent with Rule 72's requirement of a specific objection, many Circuits have held that in order to be specific, an objection must not only identify the finding or recommendation to which objection is made, but also must state the basis for the objection"). On de novo review, moreover, the Court finds no reason to disagree with the quoted finding or conclusion. Accordingly, any unspecified objection is overruled.

For the same reasons, the Court overrules Objections 5, 8, 10, and 13. They each object to specific findings or conclusions of the Magistrate Judge. (Obj'ns at 4-7.) But other than stating a "further objection" premised on due process and inadequate notice, Defendants provide no specific basis for any of these objections. (*See id.*) The Court has already overruled the objections based on

due process and notice.  And to the extent Defendants assert a different objection it does not qualify

as a specific objection.  The Court, moreover, has already conducted a de novo review of the findings

and conclusions placed at issue by Objections 5 (bad faith), 8 (culpability, including bad faith),[3] 10

(prejudice),[4] and 13 (prejudice),[5] and determined that it has no disagreement with those findings and

conclusions.

Objection 14 states a general objection to the recommendation that the Court grant the

motion for sanctions in any respect.  (Obj'ns at 7.)  Although it also states a "further objection" based

on due process and notice, the Court has already overruled such objections.  The non-specific,

general objection provides no basis for further de novo review.  *See Harbolt*, 2009 WL 3496290 at

*1 n.1.  The Court overrules Objection 14.

In Objection 15, Defendants object to the finding or conclusion of the Magistrate Judge that

an adverse inference is necessary or appropriate.  (Obj'ns at 7.)  This non-specific, general objection

likewise provides no basis for de novo review.  The Court finds no clear error in finding that an ad-

verse inference instruction is necessary and appropriate under the circumstances.  Even under a de

---

[3]In Objection 8, Defendants object to the following finding of the Magistrate Judge:
> Nevertheless, the record shows that Defendant Faulkner altered metadata on PCL-3 in an apparent effort to make it appear that he had used PCL-3 – which does not contain files that relate to the subject matter of this lawsuit – for a number of years, when in fact it was his wife's computer, and that he made false statements to the Court about doing so.  The evidence also demonstrates that Defendant Faulkner did so in the context of Defendants' having failed to turn over a computer that Defendant Faulkner had used in 2011 and that made a secure connection to PCL-3 using an IP address within the same subnet and wireless network ID as PCL-3.

(Obj'ns at 5-6.)

[4]In Objection 10, Defendants object to the finding of the Magistrate Judge that "the requisite prejudice is established from Defendants' bad faith spoliation of PCL-3 and the data thereon in the face of the 11/9/11 Order in an apparent effort to conceal the existence and significance of the Alienware computer."  (Obj'ns at 6.)

[5]Defendants object to the finding or conclusion that "Plaintiffs have been prejudiced by Defendants' bad faith spoliation of PCL-3."  (Obj'ns at 7.)

15

novo review, the Court agrees that such a sanction is warranted for the conduct found sanctionable.

### E.   Conclusions Regarding Objections

Having conducted a de novo review and determination as to the issues to which Defendants have specifically objected, the Court finds no merit to any specifically asserted objection.  And it finds no merit to any general objection under both a de novo review and a review for clear error. Accordingly, the Court overrules all objections asserted by Defendants.

## IV.   Review for Clear Error

Having reviewed the remainder of the Findings, Conclusions, and Recommendation of the Magistrate Judge for clear error, the Court finds only one matter that warrants further discussion. The Magistrate Judge recommended that Plaintiffs recover $27,500 from Defendants for the sanctionable conduct found in the FCR.  (*See* FCR at 19-20, 23.)  While this might be construed as recommending that the Court impose a monetary sanction against Defendants generally, the Magistrate Judge did not undertake to apportion the monetary sanctions between the various defendants. But it is clear from the FCR and evidence before the Court that Defendant Faulkner is the only party directly culpable for materially altering PCL-03.  Although it appears proper to attribute his actions to Defendant Breitling Oil and Gas based upon his status as CEO of that defendant, there appears to be no reason to monetarily sanction the other two individual defendants – Parker Hallam and Dustin Rodriguez.  Accordingly, the Court reasonably construes the FCR as not recommending that Defendants Rodriguez and Hallam be monetarily sanctioned, but instead merely recommends that the Plaintiffs recover the monetary sanction from whichever defendants are identified by the Court. This construction properly recognizes that the Court's discretion in fashioning an appropriate sanction includes making the sanction proportionate to the culpable conduct of the spoliating party.  *See*

16

*Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 801 (N.D. Tex. 2011).  Because the Magistrate Judge did not find any culpable conduct on the part of either Hallam or Rodriguez, they should not be held responsible for any part of the recommended monetary sanction.  Absent a later order of the Court, the monetary sanction should be apportioned between Defendant Faulkner and his employer Breitling Oil and Gas in whatever manner that they deem appropriate.  With this clarification and supplementation of the FCR, the Court finds no clear error on the face of the record.

## V.     Conclusion

After reviewing all relevant matters of record in this case, including the Findings, Conclusions, and Recommendation of the United States Magistrate Judge, the filed objections, and the transcripts from the evidentiary hearings, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3), the Court finds that the Findings and Conclusions of the Magistrate Judge are correct, as supplemented herein.  It has conducted a de novo review and determination as to the issues to which Defendants have specifically objected.  Having reviewed the remainder of the Findings, Conclusions, and Recommendation of the Magistrate Judge for clear error, it is satisfied that there is no clear error on the face of the record.  Accordingly, the Court hereby accepts the Findings and Conclusions of the Magistrate Judge as the Findings and Conclusions of the Court as discussed and supplemented herein.  Accordingly, it accepts the recommendation and **DENIES in part** and **GRANTS in part** Plaintiffs' Motion for Sanctions and Motion for Contempt Judgment (doc. 53).

For the conduct found sanctionable by the Magistrate Judge, the Court will give the jury a spoliation instruction that will entitle the jury to draw an adverse inference that a party who intentionally spoliated evidence did so in order to conceal evidence that was unfavorable to that party.  It also imposes upon Defendant Faulkner and his employer Breitling Oil and Gas a monetary

17

sanction in the amount of $27,500 payable to Plaintiffs.  Within thirty days of the date of this order,

those defendants shall collectively pay $27,500 to Plaintiffs and file a notice of payment with the

Court to show compliance with the sanction.  The motion is otherwise denied.

**SO ORDERED this 12th day of February, 2014.**


**JORGE A. SOLIS**
**UNITED STATES DISTRICT JUDGE**