**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **T & E INVESTMENT GROUP, LLC** | § | |
| **d/b/a ROBERTS INVESTMENT** | § | |
| **GROUP and TIMOTHY ROBERTS,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | **3:11-CV-0724-P** |
| | § | **(consolidated with 3:11-cv-1558-P)** |
| **CHRISTOPHER FAULKNER,** | § | |
| **BREITLING OIL AND GAS** | § | |
| **CORP., PARKER HALLAM** | § | |
| **and DUSTIN RODRIGUEZ** | § | |
| **a/k/a MICHAEL MILLER,** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

Respectfully submitted,

_____/s/ Mark A. Hendrix_____
MARK A. HENDRIX            (# 09460500)
KRAGE & JANVEY, L.L.P.
2100 Ross Avenue, Suite 2600
Dallas, Texas  75201
214-397-1905
Facsimile:  214-220-0230
Email: mhendrix@kjllp.com

ATTORNEYS FOR PLAINTIFFS

# TABLE OF CONTENTS

INDEX OF AUTHORITIES

I.    TABLE OF CONTENTS ...................................................................... 2

II.   INDEX OF AUTHORITIES.................................................................. 3

III.  SUMMARY OF THE ARGUMENT ....................................................... 5

IV.   STATEMENT OF FACTS ................................................................... 6

V.    BRIEF IN SUPPORT ....................................................................... 10

      A.    Standard for Summary Judgment ........................................... 10

      B.    Lanham Act Damages ........................................................... 11

      C.    The  Defendants' Acted Intentionally, Knowingly,
            Fraudulently, Deliberately, and in Bad Faith ........................... 13
            1.  The Defendants' acted in bad faith..................................... 13
            2.  This is an "exceptional" case ........................................... 14

      D.    Difficulty of Apportioning Profits Justifies Shifting the Burden
            to the Defendant ................................................................... 15

      E.    Awarding an Accounting of Profits .......................................... 17

      F.    Famous is a Question of Fact ................................................. 19

      G.    Confusion was Caused .......................................................... 20

      H.    Plaintiffs' May Still Elect Statutory Damages .......................... 20

      I.    Common Law Claims Have Been Proven.................................. 20

IV.   CONCLUSION.................................................................................. 21

VI.   PRAYER.......................................................................................... 22


CERTIFICATE OF SERVICES............................................................... 22

## INDEX OF AUTHORITIES

### CASES:

*8 Right, Miller and Marcus* Section 249.1 .......................................................... 21

*A&H Sportswear Co. v. Victoria's Secret Stores, Inc.*,
  237 F.3d, 198 (3d Cir. 2000) ................................................................ 14, 20

*Anderson, et al. v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986) ................................. 10

*Boston Professional Hockey Assoc., Inc. v. Dallas Cap & Emblem
  Manufacturing, Inc.,* 597 F.2d 71, 75 (5th Cir. 1979) ............................................. 12, 16

*Delilah Media Group, L.P. v. V.L. Raymer a/k/a Virginia Comito*,
  2005 U.S. Dist. LEXIS 13253 (N.D. Tex. June 30, 2005) ........................................... 14

*Ferrara & DiMercurio v. St. Paul Mercury insurance Company*, 240 F.3d
  110 (1st Cir. 2001) ............................................................................ 21

*Ford Motor Co. v. Cross,* 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006) ............................ 14

*Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994) ............................................... 10

*Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.,* 240 U.S. 251, 261-62
  (1916) ......................................................................................... 13, 16, 18

*Maltina Corp. v. Cawy Bottling Co., Inc.,* 613 F.2d 582, 585
  (5th Cir. 1980) ................................................................................ 12, 16, 17

*Mishawaka Rubber & Woolen Mfg. Co. v.* S.S. *Kresge Co.,*
  316 U.S. 203, 206-207 (1942) .................................................................. 12, 16, 18

*N.A.S. Import, Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250, 252
  (2nd Cir. 1992) ............................................................................ 14

*Pebble Beach Co., v. Tour 18 I, Ltd.*, 942 F. Supp. 1513 (S.D. Tex. 1996) ....................... 15

*Pebble Beach Co. v. Tour 18 I Ltd.,* 155 F.3d 526, 555 (5th Cir. 1998) .......................... 14, 18

*Quick Tech, Inc. v. The Sage Group PLC,* 313 F.3d 338, 348
  (5th Cir. 2002) ................................................................................ 12, 16, 18

*Seatrax, Inc. v. Sonbeck Int'l, Inc.,* 200 F.3d 358, 369 (5th Cir. 2000) .......................... 18

*System Forward America, Inc., v. Martinez d/b/a Pop-A-Car-Open,*
2005 U.S. App. LEXIS 6527 at 3 (5th Cir. 2005) ...................................................... 12

*Sys. Forward Am., Inc. v. Martinez,* 129 Fed. Appx. 88, 89 (5th Cir. 2005) .................. 16

*Texas Tech Univ. v. Spiegelberg,* 461 F.Supp.2d 510, 526
(N.D. Tex. 2006) ............................................................................................ 11, 15

*VIP Foods, Inc. v. Vulcan Pet, Inc.,* 675 F.2d 1106, 1107 (10th Cir. 1982) .................... 14

*Wynn Oil Co. v. American Way Service Corp.,* 943 F.2d 595, 606
(6th Cir. 1991) ........................................................................................ 12, 15, 17

## STATUTES:

15 U.S.C. §§ 1051 ................................................................................................  6

15 U.S.C. § 1121 .................................................................................................. 6

15 U.S.C. § 1117(a) ................................................................................... 11, 11, 16

15 U.S.C. § 1117(c) .......................................................................................... 20

28 U.S.C. §§ 1331 and 1338 ............................................................................... 6

## RULES:

Fed. R. Civ. P., 26(e)(1)(A) ................................................................................. 21

## TREATISES:

3 Jerome Gilson, Trademark Protection and Practice
§14.03[6][d] (2003) ......................................................................................... 11, 15

Federal Trademark Act ..................................................................................... 16

**TO THE HONORABLE JUDGE IN SAID COURT:**

COMES NOW, T&E INVESTMENT GROUP, LLC d/b/a ROBERTS INVESTMENT GROUP ("RIG") and TIMOTHY ROBERTS ("Roberts") (RIG and Roberts are sometimes collectively referred to as the "Plaintiffs") and files this Response to Defendants' Motion for Summary Judgment and Brief in Support.

**I.**

**<u>SUMMARY OF ARGUMENT</u>**

Defendants' Motion evinces a failure of the Defendants to appreciate the breadth and significance of the causes of action asserted against them, a misunderstanding of the basic tenets of statutory trademark law, confusion concerning their summary judgment burden, and most importantly, the seriousness of their behavior.

1. The statute has eight (8) non-exclusive test which are by nature a fact question. The Affidavit of Timothy Roberts provides sufficient facts to raise this issue.

2. As to the Lanham Act violations, the evidence is that Defendants used Plaintiffs actual name to defame and reroute Plaintiffs' potential investors.

3. As to the unfair competition, libel, statutory libel, and business disparaging claims, the evidence Timothy Roberts shows with undeniable certainty these claims.

4. Also, the report of the Court's expert, R. Lance Fogarty, clearly shows violation of all the claims made by Plaintiffs.

---

5. Lastly, the order of this Court granting a presumption of destroyed evidence prohibits a summary judgment.

6. As to damages, Plaintiffs have provided information to Defendants showing the amount and persons with knowledge of Plaintiffs' damages.   However, Defendants also misunderstood the burden at Plaintiffs in this matter.   To recover, all Plaintiffs must do is show Defendants' profits.   It is the Defendants' burden to show these profits were not derived from their actions.   Plaintiffs also do not have to elect damages or statutory penalty until before final judgment in this case.

## II.

## STATEMENT OF FACTS

1.     This action arises under a federal statute specifically 15 U.S.C. §§ 1051, *et seq.*   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338, and under 15 U.S.C. § 1121.   The Court has jurisdiction over the Texas state law claims under principles of pendent and ancillary jurisdiction.

2.     Upon information and belief, each of the individual defendants resides in the Northern District of Texas; all or a substantial part of the events pleaded hereinafter that give rise to the claims stated in this complaint occurred in the Dallas Division of the Northern District of Texas.

3.     RIG is and has been since 2005 in the business of soliciting investments in oil and gas drilling operations by acquiring leases and selling undivided working interests to accredited investors. Parker Hallam ("Hallam") and Dustin Rodriguez ("Rodriguez") are former employees of RIG.

4.      RIG was formed by Timothy Roberts and his wife in Texas in 2005 and since that time has continuously used the trade name "Roberts Investment Group".  RIG maintains and uses a logo "R [symbol of drilling rig] G" underneath which is spelled out "Roberts Investment Group".  RIG has used this logo and used its trade name on letterhead and other publications and advertisements continuously since 2005.  No other person or company in Texas has used said name or logo prior to the use by Plaintiffs.

5.      On or about October 2, 2009, Hallam and Rodriguez quit their employment with RIG.  Prior to resigning from RIG, they combined with Christopher Faulkner to form Breitling Oil and Gas Company ("Brietling") on or about September 28, 2009.  Breitling is a competitor of RIG in the same general business enterprise.  Faulkner, Hallam and Rodriguez are officers and directors of Breitling; their conduct and activities complained of herein were committed for the benefit of Breitling, to gain an unfair competitive advantage to plaintiffs' business.

6.      Sometime prior to June 1, 2010, Faulkner, personally or through his wife, acquired approximately 20 websites using variations of RIG and Timothy Roberts as the domain names.  Two of the websites are named "RobertsInvestmentGroupInfo.com" and "TimRobertsOil&Gas.com".  Using these internet domain sites, Faulkner acting on behalf of Breitling, and with the assistance and aid of Hallam and Rodriguez, began publishing defamatory, false and malicious information regarding Roberts and the business enterprise of RIG on the internet.  The URLs were so situated such that if a member of the public used a search engine such as Google or Yahoo to search for the name Roberts, Tim Roberts, Roberts Oil and Gas, or Roberts Investment, the URLs acquired by Faulkner and Breitling would be the first few that would be published by the search engine.  The information contained on the URLs typically began by using the stolen logo of RIG identified hereinabove and indicated, at first blush, that the

information being published was from Roberts Investment Group.  The information is false, malicious and defamatory and ends with the following phrase "**DO NOT INVEST WITH ROBERTS INVESTMENT GROUP, TIM ROBERTS OR ELISA ROBERTS. THEY ARE CROOKS!!!**" and ends at the bottom of the page with the phrase "**INVESTORS BEWARE!!!!!!**".  Other URL publications illegally planted by Faulkner begin with the Roberts Investment Group logo and defame one of its employees, Brad Pratt, and defame the business enterprise of Roberts and his company.    They    likewise    end    with    "**INVESTORS BEWARE!!!!!!!!!!!!!!!!!**".  (See Affidavit of Timothy Roberts attached hereto as **Exhibit A**, and incorporated herein as if set forth in verbatim.)

7.      Faulkner attempted to disguise the author of the information on some of these pirated URLs by identifying the author as "Nathan Vaughn", a lawyer in the State of Ohio.  [Mr. Vaughan's name is correctly spelled with two "a"s.]  Mr. Vaughan had represented a plaintiff against RIG in an earlier lawsuit and had obtained a default judgment against the company in 2008.  Mr. Vaughan, however, had nothing to do with the publication of the defamatory products actually authored by Faulkner for the benefit of Breitling with the aid of Hallam and Rodriguez.  Faulkner attempted to disguise his true identity but information embedded in the URLs identify him as the actual owner and author.

8.      In addition, on information and belief, Faulkner, aided by Hallam and Rodriguez, faxed false and defamatory fake "wanted" posters for Roberts and his wife Elisa in February 2011 indicating they were from a fictitious entity called "Oil and Gas Fraud Association" but which was really a pseudonym for Faulkner and/or the other individual defendants.  These faxes were sent to Roberts' church and bank and many other recipients who knew Roberts, including out-of-state companies that had done business with plaintiffs.  The fax information was false, defamatory and malicious and

sought to defame Roberts and RIG and its business enterprise.  The fax was printed as if it were some form of "wanted" poster and began with **"WANTED".**  The fax read "Oil and Gas Investor Fraud, Timothy and Elisa Roberts, Roberts Investment Group, DBC Operating [another d/b/a of T & E Investment Group, LLC] (Midlothian, TX)", then contained a picture of Mr. Roberts and his wife and continued with the defamatory statement "Tim and Elisa Roberts have defrauded oil and gas investors out of millions of dollars and paid little to no return".  The poster continued:  "**REWARD AVAILABLE – STOP THE FRAUD NOW!**"

9.      The information in these facsimile transmissions was wholly false, defamatory, malicious and actionable.

10.     Plaintiffs have suffered actual and special damages as a result of defendants' conduct.

11.     On February 16, 2011, Plaintiffs were hit by a fax attack targeting businesses located in North and South Dallas. This one attack paralyzed Plaintiffs. Plaintiffs received several hundred phone calls. The fax stated that if you wanted to be removed, had any information and wanted a reward to call specific telephone numbers. Each number was either to RIG or directly to Mr. Roberts' personal cell phone. The header of the fax showed the name "Oil and Gas Fraud Association."  This site is dedicated to the defaming of RIG.  It is hosted by ENO Inc., a United States of America based company.   False names are given as to the authors of "Nathan Vaughn". Plaintiffs' forensics company has a report outlining each domain and posting relative to this case.  It was through this tracking that forensics came across another author as

"Donna McCauley."  Research has shown this to be a relative of Christopher Faulkner. Ms. McCauley passed away in June 2010.

12.     Due to the online negative and defamatory comments, Mr. Roberts has opened a separate "doing business as" known as "Dynamic Energy Partners." There was no way to continue offering marketing or investor packets with the name of "Roberts Investment Group."  In Plaintiffs' business it is very rare that they meet directly with their investors. The large majority is through phone communication. Each investor is able to due to their due diligence by contacting our references and through search on the Internet. The negative postings were taking up the first three (3) pages on the Google search engine.  Plaintiffs hired an "online reputation management" company to defend and post truthful comments on the internet, thus driving down the negative postings to lower pages. We are still engaged in publicizing positive information. (*Supra.*)

### III.

### BRIEF IN SUPPORT

**A.     Summary Judgment Standard**

A party moving for summary judgment has the initial burden of showing that there is no genuine issue of material fact *Anderson, et al. v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). For purposes of the motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The court should only decide the case as a matter of law where the facts are undisputed or "the

evidence is so one-sided that it leaves no room for any reasonable differences of opinion as to any material fact." *Id* at 248.

Once the moving party has met this burden, the non-moving party must set forth specific facts showing a genuine issue for trial. *Id* at 256. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s][its] claim [s]." *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994).

## B.    Lanham Act Damages

Among other things, Plaintiffs are seeking damages for trademark infringement pursuant to 15 U.S.C. § 1117(a), which entitles Plaintiffs to recover its actual damages and/or the defendants' profits when a violation of Section 43(a) (false advertising and designation) or 43(d) (cyberpiracy/cybersquatting) of the Lanham Act occurs.

In this case, Plaintiffs are seeking, among other damages, the disgorgement of the Defendants' profits.  In assessing an infringer's profits for trademark infringement, the Lanham Act expressly provides that "the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a).  In other words, once a plaintiff proves a defendant's gross sales, "the defendant bears the burden of demonstrating which of its total sales are *not* attributable to the infringing activity as well as any deductions for its overhead." 3 JEROME GILSON, TRADEMARK PROTECTION AND PRACTICE § 14.03[6][d] (2003) (citing 15 U.S.C. § 1117(a)); *see also Texas Tech Univ. v. Spiegelberg,* 461 F.Supp.2d 510, 526 (N.D. Tex. 2006) ("According to the plain meaning of the Act, the plaintiff is entitled to the full amount of the defendant's gross sales where the defendant has not produced

any evidence of deductions."); *Wynn Oil Co. v. American Way Service Corp.,* 943 F.2d 595, 606 (6th Cir. 1991) ("[B]oth common sense and the statute suggest that the burden of apportioning profits should be placed on defendants.").

Contrary to the Defendants' assertions, this analysis does not impose an obligation on Plaintiffs to first demonstrate that it actually lost sales to Defendants or that Defendants' actions caused actual confusion in the marketplace in order for Plaintiffs to recover Defendants' wrongfully obtained profits. To the contrary, the Fifth Circuit has repeatedly held that proof of actual confusion (such as actual injury to Plaintiffs through lost sales and/or actual confusion by Plaintiffs' customers) is not required in order to obtain an award of defendant's profits. *See Quick Tech, Inc. v. The Sage Group PLC,* 313 F.3d 338, 348 (5th Cir. 2002) (citing *Maltina Corp. v. Cawy Bottling Co., Inc.,* 613 F.2d 582, 585 (5th Cir. 1980) ("an accounting is proper even if the defendant and plaintiff are not in direct competition, and the defendants' infringement has not diverted sales from the plaintiff")); *see also Boston Professional Hockey Assoc., Inc. v. Dallas Cap & Emblem Manufacturing, Inc.,* 597 F.2d 71, 75 (5th Cir. 1979) (upholding award of actual damages and defendant's profits without quantifiable proof of lost sales because mere misappropriation of trademark deprived plaintiff of the economic benefits associated with plaintiff's property rights in the mark).

Indeed, the Supreme Court has explained that "[t]he burden is the infringer's [the Defendants] to prove that [their] infringement had no cash value in sales made by [them]." *Mishawaka Rubber & Woolen Mfg. Co. v.* S.S. *Kresge Co.,* 316 U.S. 203, 206-207 (1942); *see also System Forward America, Inc., v. Martinez d/b/a Pop-A-Car-Open,* 2005 U.S. App. LEXIS 6527 at 3 (5th Cir. 2005) (citing *Mishawaka,* the Fifth Circuit

explained that the defendant "'bore the burden of proving that his infringement did not result in his financial benefit"). The Defendants simply have not and cannot meet this burden.

Regardless, as described above, Plaintiffs have provided sufficient summary judgment evidence to establish fact issues concerning: (1) Defendants intent to mislead and divert Plaintiffs' customers to website; (2) actual confusion in the marketplace and a likelihood of confusion that continues to exist due to Defendants' ongoing redirection efforts and metatag use; (3) the Defendants' intentional destruction or negligence in preserving the best evidence of damages and actual confusion; and (4) the Defendants' purposeful deprivation to Plaintiffs of the economic benefits associated with Plaintiffs' rights in its trade names and trademarks and the Defendants' admitted intention was to lock down the Plaintiffs' name. Under these circumstances, there is ample evidence of Plaintiffs' damages and Defendants' Motion must be denied.

**C.    The Defendants' Acted Intentionally, Knowingly, Fraudulently, Deliberately, and in Bad Faith.**

Seeking to avoid a finding of bad faith, the Defendants have concocted a sham defense in an attempt to prove their lack of bad faith or willful intent for their admitted infringement. There is ample evidence to support both a finding of bad faith, as well as the requisite intent to support an award of attorneys' fees.

**1.    The Defendants' acted in bad faith.**

The Defendants have used, registered, and trafficked in domain names "nearly indistinguishable" from Plaintiffs' marks.

This alone is sufficient when done by a competitor.  *A&H Sportswear Co. v. Victoria's Secret Stores, Inc.*, 237 F.3d, 198 (3d Cir. 2000).  When companies are complying the Court rarely needs to look beyond the mark itself; infringement will usually be found if the two marks at issue are sufficiently similar that consumer confusion be expected.

2.    **This is an "exceptional" case.**

In *Ford Motor Co. v. Cross,* 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006). A magistrate judge held that the defendant's intent in registering "formoco.com" was to profit from the value of the plaintiff's trademark; thus, the defendant's action constituted a violation of the ACPA.  The Cross court also explained that "actual knowledge is not required [to find willful infringement] . . . constructive knowledge will trigger the enhancement [to the enhanced statutory damages limit of $1,000,000 for the use of a counterfeit mark]." *Id.* at 852 (citing *N.A.S. Import, Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250, 252 (2nd Cir. 1992)).   The court further concluded that because defendant's unlawful conduct was at least "deliberate," a finding of exceptional case and an awarded of attorneys' fees was appropriate.   *Id.* at 854.  Consistent with these cases, in *VIP Foods, Inc. v. Vulcan Pet, Inc.*, 675 F.2d 1106, 1107 (10th Cir. 1982), the Tenth Circuit held that where the "defendant had no intent to deceive or confuse the public or to willfully infringe upon plaintiff's trademark," an award of fees is not warranted.

This is exactly the type of exceptional behavior the Lanham Act is designed to prevent, in part, by statutorily providing for an award of attorneys' fees. *See, e.g.*, *Delilah Media Group, L.P. v. V.L. Raymer a/k/a Virginia Comito*, 2005 U.S.

Dist. LEXIS 13253 (N.D. Tex. June 30, 2005) (holding that bad faith registration of domain name with intent to profit from the good will of trademark owner supported finding of exceptional case and award of attorneys' fees); *Pebble Beach Co., v. Tour 18 I, Ltd.*, 942 F. Supp. 1513 (S.D. Tex. 1996) (explaining that while deliberate copying does not per se establish when combined with deliberate behavior supports a finding of exceptionality).   Accordingly, because Plaintiffs have provided evidence that Defendants acted deliberately and with an intention to prey on the goodwill associated with Plaintiffs' marks, there is a fact issue which required the denial of the Defendants' motion for summary judgment concerning bad faith and our "exceptional" case.

## D.   Difficulty of Apportioning Profits Justifies Shifting the Burden to the Defendant.

The plaintiff's burden in providing profits in trademark infringement cases is law. In fact, once the plaintiff has proven the defendant's gross sales, "the defendant bears the burden of demonstrating which of its total sales are *not* attributable to the infringing activity as well as any deductions for overhead." 3 JEROME GILSON, TRADEMARK PROTECTION AND PRACTICE §14.03[6][d] (2003) (citing 14 U.S.C. § 1117(a)); *see also Texas Tech Univ. v. Spiegelberg*, 461 F. Supp. 2d 510, 527 (N.D. Tex. 2006) ("According to the plain meaning of the Act, *the plaintiff is entitled to the full amount of the defendant's gross sales* where the defendant has not produced any evidence of deductions." (emphasis added)); *Wynn Oil Co. v. Am. Way Serv. Corp.,* 943 F.2d 595, 606 (6th Cir. 1991) ("[B]oth common sense and the statute suggest that the burden of apportioning profits should be placed on defendants.").

Furthermore, the Fifth Circuit has repeatedly held that proof of actual confusion *is not required* to obtain an award of defendant's profits. *See, e.g., Quick Techs., Inc. v. The Sage Group PLC,* 313 F.3d 338, 348 (5th Cir. 2002) (holding that an accounting can "be proper 'even if the defendant and plaintiff are not in direct competition, and the defendants' infringement has not diverted sales from the plaintiff'" (quoting *Maltina Corp. v. Cawy Bottling   Co.,* 613 F.2d 582, 585 (5th Cir. 1980))); *see also Boston Prof'l Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg, Inc.,* 597 F.2d 71, 75 (5th Cir. 1979) (upholding an award of actual damages and defendant's profits without quantifiable proof of lost sales because the mere misappropriation of its trademark deprived plaintiff of the economic benefits associated with its property rights in the mark).

The burden is the infringer's to prove that [its] infringement had "no cash value in sales made by" it. *Mishawaka Rubber & Woolen Mfg. Co. v.* S.S. *Kresge Co.,* 316 U.S. 203, 206-07 (1942); *see also Sys. Forward Am., Inc. v. Martinez,* 129 Fed. Appx. 88, 89 (5th Cir. 2005) (citing *Mishawaka* and explaining that the defendant "bore the burden of proving that his infringement did not result in his financial benefit.").

The Supreme Court has long recognized that there are at least two ways an apportionment of damages can be difficult in a trademark case. *See Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.,* 240 U.S. 251, 261-62 (1916) (discussing difficulty of apportionment). It can be "because of the inherent impossibility of making an approximate apportionment," in which case the wrongdoer "cannot take advantage of his own wrong," and so all the profits should go to the trademark holder. *Id.* Or it can be "because of the *action of the wrongdoer* in confusing his own gains with those which belong to plaintiff"--i.e., because the infringer tried to hide its ill-gotten gains by pooling

them with its legitimate gains, or by refusing to produce evidence showing the correct apportionment of profits. *Id.* (emphasis added).

Courts have not looked kindly upon the latter type of case, in which infringers attempted to hide their profits or do not cooperate in discovery. For example, in *Wynn Oil,* 943 F.2d at 606, the defendant's "elusive" tactics included resisting discovery by claiming its sales information was a "'trade secret," and subsequently furnishing suspect income figures. Because the burden to show which profits were *not* due to the infringement was on the defendant, the appeals court reversed the trial court's decision not to award the plaintiffs "a recovery based on defendants' profits." *Id.* at 606-07.

## E.     Awarding an Accounting of Profits.

Fifth Circuit law on awards of accounting of profits is clear: a plaintiff under Section 1117(a) is entitled to an accounting of profits to "remedy [the defendant's] unjust enrichment" from trademark infringement.   *Maltina,* 613 F.2d at 585. An award of an accounting of profits is based on the idea of the plaintiff's trademark as a legally protected property right. *Id.* Thus, a plaintiff *is not required to show a diversion of its sales to the defendant;* the defendant's infringement of the plaintiff's mark is generally sufficient. *Id.*

Courts in the Fifth Circuit have used a "non-exhaustive list of factors" to help determine when an accounting of profits is appropriate:

> (1) whether the defendant intended to confuse or deceive;
>
> (2) whether sales have been diverted;
>
> (3) the adequacy of other remedies;
>
> (4) any unreasonable delay by the plaintiff in asserting its rights;

(5) the public interest in making the conduct unprofitable, and

(6) whether it is a case of palming off.

*Seatrax, Inc. v. Sonbeck Int'l, Inc.,* 200 F.3d 358, 369 (5th Cir. 2000). Even considering these factors, however, the defendant's "willfulness" in infringing the plaintiff's mark is *not* a requirement for an accounting of profits. *Quick Techs., Inc. v. The Sage Group PLC,* 313 F.3d 338, 347-49 (5th Cir. 2002).

Most importantly, when an accounting of profits is awarded, the burden is unquestionably on the defendant to show that it "made no profit from the infringing use of the mark." *Pebble Beach Co. v. Tour 18 I Ltd.,* 155 F.3d 526, 555 (5th Cir. 1998). In fact, the law is clear that if the profits from the infringing mark cannot be separated from the defendant's other profits, the plaintiff will be entitled to the "windfall" of all the defendant's profits. *Id.* (citing *Mishawaka,* 316 U.S. at 206-07).

Despite *Mishawaka's* vintage, the Fifth Circuit found it instructive in conducting an accounting of profits.  *See Pebble Beach,* 155 F.3d at 555 (following the *Mishawaka* reasoning to render a holding in a trademark case). As the Supreme Court stated, if the defendant cannot separate its infringing profits from its non-infringing profits, the plaintiff is entitled to the "windfall" of all the profits because "'to hold otherwise would give the windfall to the wrongdoer." *Mishawaka,* 316 U.S. at 207. This is a long-settled point of law. *See Hamilton-Brown Shoe,* 240 U.S. at 261 (holding in 1916 that a windfall to a trademark plaintiff is appropriate when it can show the profits the defendant made "but is unable to apportion them").

**F.     Famous is a Question of Fact.**

The FTDA provides eight (8) non-exclusive factors that courts may consider in determining a mark's famousness.  They are:

(A)     the degree of inherent or acquired distinctiveness of the mark;

(B)     the duration and extent of use of the mark in connection with the goods and services with which the mark is used;

(C)     the duration and extent of advertising and publicity of the mark;

(D)     the geographical extent of the trading area in which the mark is used;

(E)     the channels of trade for the goods or services with which the mark is used;

(F)     the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought;

(G)     the nature and extent of use of the same or similar marks by third parties; and

(H)     whether the mark was registered under the Act of March 3, 1881, of the Act of February 20, 1905, or on the principal register.

The evidence provided by Timothy Roberts in his affidavit clearly shows enough evidence to give a fact question as to whether or not the mark of Plaintiffs was "famous" as required by the dilution portion of the Federal Trademark Act.

However, "famous" is not required for trademark infringement.   In case of a competitor, merely adopting the name, as done here, is sufficient.   *A&H Sportswear Co. v. Victoria's Secret Stores, Inc.*, 237 F.3d, 198 (3rd Cir. 2000) (*Supra*).

## G.   Confusion Was Caused.

As to the claim there is no evidence of confusion, there is clear evidence of adoption of Plaintiffs' actual names.   That is clearly enough evidence to show there could be confusion in the market place.

## H.   Plaintiffs' May Still Elect Statutory Damages.

As to the claim that Plaintiffs have somehow waived their right to elect statutory damages. This election does not have to occur until any time before final judgment in this case. 15 U.S.C. § 1117(c).

## I.   Common Law Claims Have Been Proven.

As to the motion for summary judgment relating to the common law claims of unfair competition, libel, statutory libel, and business disparagement claims, the Affidavit of Timothy Roberts and the report of the Court's expert, R. Lance Fogarty, clearly show that the Defendants concocted a scheme to destroy the business of Plaintiffs.   They adopted the name, they sent out misleading and libelous statements, and attempted to trademark Plaintiffs' own name so that they could damage Plaintiffs' business.   This specious argument is shows the extent to which Defendants will go in order to try to avoid trial in this case.

As to damages, the Defendants have been provided the amount of damages claimed and the persons who have relevant knowledge of these issues.   *See* Affidavit of Timothy Roberts. Specific supplementation of any rule is not required if the information

has otherwise been made known to the other parties during the discovery process or in writing.  *See* FED. R. CIV. P., 26(e)(1)(A); *Ferrara & DiMercurio v. St. Paul Mercury insurance Company*, 240 F.3d 110 (1st Cir. 2001). *See also 8 Right, Miller and Marcus* Section 249.1 (no need to supplement discovery to include information already received by witness in deposition or otherwise during formal discovery).

The basic rule under this is whether or not it works as a "surprise" on the other party.  Since they have had this information for a significant amount of time, no surprise is possible.  In addition, considering that the Defendants have just recently rerouted another website.  The damages at this time are increasing because of new evidence discovered within the last 30 days.

## IV.

## <u>CONCLUSION</u>

In conclusion, a summary judgment in this case, in any issue, should not be granted since the Court has, based upon an earlier hearing, issued an order that there is a presumption that the Defendants in this case have destroyed evidence and with that presumption, summary judgment is not possible.

## V.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants' Motion for Summary Judgment be denied and such other and further relief, both general and special, at law or in equity to which Plaintiffs may show themselves to be justly entitled.

_/s/ Mark A. Hendrix_

MARK A. HENDRIX    (# 09460500)
RALPH S. JANVEY    (# 10572500)
KRAGE & JANVEY, L.L.P.
2100 Ross Avenue, Suite 2600
Dallas, Texas  75201
214-397-1905
Facsimile:  214-220-0230
Email:  mhendrix@kjllp.com
ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that on the 29TH day of September, 2014, this document was served in compliance with Rule 5, FED. R. CIV. P., on all other parties by CM/ECF.

_/s/ Mark A. Hendrix_

MARK A. HENDRIX
