# TAB 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **T & E INVESTMENT GROUP, LLC** | § | |
| **d/b/a ROBERTS INVESTMENT** | § | |
| **GROUP and TIMOTHY ROBERTS,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | **3:11-CV-0724-P** |
| | § | **(consolidated with 3:11-cv-1558-P)** |
| **CHRISTOPHER FAULKNER,** | § | |
| **BREITLING OIL AND GAS** | § | |
| **CORP., PARKER HALLAM** | § | |
| **and DUSTIN RODRIGUEZ** | § | |
| **a/k/a MICHAEL MILLER,** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**

T&E INVESTMENT GROUP, LLC D/B/A ROBERTS INVESTMENT

GROUP and TIMOTHY ROBERTS ("T&E"), Plaintiffs herein, submits their

Proposed Jury Charge.

Respectfully submitted,

_____*/s/ Mark A. Hendrix*_____
MARK A. HENDRIX
State Bar No. 09460500
**KRAGE & JANVEY, LLP**
2100 Ross Avenue, Suite 2600
Dallas, Texas 75201
(214) 397-1905
(214) 220-0230 Facsimile
**ATTORNEY FOR PLAINTIFFS T & E
INVESTMENT GROUP, LLC D/B/A
ROBERTS INVESTMENT GROUP AND
TIMOTHY ROBERTS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Plaintiff's Proposed Jury Charge was served upon defendant's attorneys of record *via* the Court's ECF filing system on this 6th day of February, 2015.


       */s/ Mark A. Hendrix*
       Mark A. Hendrix

## REQUESTED JURY INSTRUCTION
## NO. 1.

### Preliminary Instructions

MEMBERS OF THE JURY:

You have now been sworn as the jury to try this case. As the jury you will decide the disputed questions of fact.[1]

As the Judge, I will decide all questions of law and procedure. From time to time during the trial and at the end of the trial, I will instruct you on the rules of law that you must follow in making your decision.[2]

Soon, the lawyers for each of the parties will make what is called an opening statement. Opening statements are intended to assist you in understanding the evidence. What the lawyers say is not evidence.[3]

After the opening statements, the plaintiff will call witnesses and present evidence. Then, the defendant will have an opportunity to call witnesses and present evidence. After the parties' main case is completed, the plaintiff may be permitted to present rebuttal evidence. After all the evidence is completed, the lawyers will again address you to make final arguments. Then I will instruct you on the applicable law. You will then retire to deliberate on a verdict.[4]

Keep an open mind during the trial. Do not decide any fact until you have heard all of the evidence, the closing arguments, and my instructions.[5]

Pay close attention to the testimony and evidence. [Do not take notes.][6]

[Alternate 1: You will need to rely on your memories.][7]

---

[1] *United States Fifth Circuit District Judges Association, Pattern Jury Instructions: Civil Cases* § 1.1 (West 2006) (hereinafter *Fifth Circuit Pattern Jury Instructions*).
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*

[Alternate 2: If you would like to take notes during the trial, you may do so. If you do take notes, be careful not to get so involved in note taking that you become distracted and miss part of the testimony. Your notes are to be used only as aids to your memory, and if your memory should later be different from your notes, you should rely on your memory and not on your notes. If you do not take notes, rely on your own independent memory of the testimony. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than the recollection of each juror concerning the testimony.] Even though the court reporter is making stenographic notes of everything that is said, a typewritten copy of the testimony will not be available for your use during deliberations.  On the other hand, any exhibits will be available to you during your deliberations.[8]

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. Do not discuss the case even with the other jurors until all of the jurors are in the jury room actually deliberating at the end of the case. If anyone should attempt to discuss this case or to approach you concerning the case, you should inform the Court immediately. Hold yourself completely apart from the people involved in the case—the parties, the witnesses, the attorneys and persons associated with them. It is important not only that you be fair and impartial but that you also appear to be fair and impartial.[9]

Do not make any independent investigation of any fact or matter in this case. You are to be guided solely by what you see and hear in this trial. Do not learn anything about the case from any other source. In particular, do not read any newspaper account of this trial or listen to any radio or television newscasts concerning it.[10]

During the trial, it may be necessary for me to confer with the lawyers out of your hearing or to conduct a part of the trial out of your presence.  I will handle

---

[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
1235433v3

these matters as briefly and as conveniently for you as I can, but you should remember that they are a necessary part of any trial.[11]

It is now time for the opening statements.[12]

GIVEN: _____

REFUSED: _____

GIVEN AS MODIFIED:

_____

U.S. DISTRICT JUDGE

---

[11] *Id.*

[12] *Id.*

1235433v3

REQUESTED JURY INSTRUCTION
NO. 2.

<u>General Instructions for Charge</u>

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.[13]

[After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments.] [You have heard the closing arguments of the attorneys.] Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.[14]

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.[15]

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.[16]

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw

---

[13] *Fifth Circuit Pattern Jury Instructions* § 3.1.
[14] *Id.*
[15] *Id.*
[16] *Id.*

from the facts that have been established by the testimony and evidence in the case.[17]

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.[18]

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence—such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.[19]

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field—he is called an expert witness—is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.[20]

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.[21]

[Any notes that you have taken during the trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.  Notes are not entitled to any

---

[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
1235433v3

greater weight than the recollection or impression of each juror about the testimony.][22]

A corporation may act only through natural persons as its agents or employees. In general, any agents or employees of a corporation may bind the corporation by their acts and declarations made while acting within the scope of their authority delegated to them by the corporation or within the scope of their duties as employees of the corporation.[23]

Generally speaking, in this case the plaintiff must prove every essential part of its claim by a preponderance of the evidence. A preponderance of the evidence simply means evidence that persuades you that the plaintiff's claim is more likely true than not true.[24] However, sometimes the law imposes a heavier burden of proof known as the "clear and convincing evidence" standard on one or more of the parties because of public policy considerations. You will be instructed which evidentiary standard to apply in deciding each issue in the case.

In deciding whether any fact has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.[25]

If the proof fails to establish any essential part of the plaintiff's claim by a preponderance of the evidence, you should find for the defendant as to that claim.[26]

As to the counterclaim, the defendant is in the position of a plaintiff and the defendant has the burden of proving the essential elements of the counterclaim.[27]

Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction as to the matter at issue. Clear and convincing evidence involves a greater degree of persuasion than is necessary to meet the

---

[22] *Id.*

[23] 3 O'Malley § 103.31.

[24] *Fifth Circuit Pattern Jury Instructions* § 2.20.

[25] *Id.*

[26] *Id.*

[27] 3 O'Malley § 104.01.

1235433v3

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS – Page 9**

preponderance of the evidence standard. This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.[28]

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.  You must never disclose to anyone, not even to me, your numerical division on any question.[29]

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.[30]

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.[31]

Throughout this charge:

The plaintiffs in this lawsuit is T&E and Timothy Roberts.

The defendants in this case are Christopher Faulkner, Breitling Oil and Gas Corporation, Parker Hallam and Dustin Rodriguez a/k/a Michael Miller.  When I refer to the defendants, I will use the terms Defendants or Christopher Faulkner, Breitling Oil and Gas Corporation, Parker Hallam and Dustin Rodriguez a/k/a Michael Miller.

---

[28] 3 O'Malley § 104.02.
[29] *Fifth Circuit Pattern Jury Instructions* § 3.1.
[30] *Id.*
[31] *Id.*

| GIVEN: _____ |
| REFUSED: _____ |
| GIVEN AS MODIFIED: |
| |
| |
| U.S. DISTRICT JUDGE |

REQUESTED JURY INSTRUCTION
NO. 3.

## SPOLIATION

Spoliation is "the destruction or significant alteration of evidence, *or the failure to preserve property* for another's use as evidence in pending or reasonably foreseeable litigation." *Union Pacific R. Co. v. Heartland Barge Management, L.L.C.*, 2006 WL 2850064, at *15 (S.D. Tex. Oct. 03, 2006) (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)) (emphasis added); see also *Consolidated Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 339 (M.D. La. 2006); *Zubulake v. UBS Warburg*, LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (discussing spoliation).

The Court has found that the Defendants spoliated evidence and that the jury is entitled to adverse inference that they did so to conceal evidence that was unfavorable to Defendants.

REQUESTED JURY INSTRUCTION
NO. 4.

<u>Instructions for Question No. 1</u>

A "trademark" is any word, name, combination of letters, symbol, or device or any combination thereof, including a "trade name" or "commercial name" used to identify a business or vocation, that is adopted and used by a merchant or manufacturer to identify and distinguish its goods and services from those sold or manufactured by others and to identify the source of its goods and services.[32] Throughout these instructions, I may refer to trademarks by the shorter term "marks."

The law gives the owner of a trademark the right to exclude others from using that mark or a similar mark that is likely to cause confusion by being the first to use it in the marketplace.[33] Rights in a trademark are obtained only through commercial use of the trademark.[34] Anyone who, without the consent of the owner, uses a trademark in connection with the sale of goods or services in a manner likely to cause confusion as to the source of the goods or services infringes that trademark.[35]

In this case, T&E and Timothy Roberts seek damages from defendants or Christopher Faulkner, Breitling Oil and Gas Corporation, Parker Hallam and Dustin Rodriguez a/k/a Michael Miller for trademark infringement. Defendants deny infringing the trademark.[36]

---

[32] 15 U.S.C. § 1127; *Two Pesos Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992); *San Francisco Arts & Athletics v. U.S. Olympic Comm.*, 483 U.S. 522, 531 (1987); *Model Jury Instructions: Business Torts Litigation* 4.01[1] (3d ed. 1996).

[33] 3A O'Malley, K., et. al., FEDERAL JURY PRACTICE AND INSTRUCTIONS § 159.01 (5th ed. 2001) (hereinafter "3A O'Malley"); *Union Nat'l Bank of Texas, Laredo v. Union Nat'l Bank of Texas, Austin*, 909 F.2d 839, 842-43 (5th Cir. 1990).

[34] 3A O'Malley § 159.01.

[35] Manual of Modern Jury Instructions, Ninth Circuit, Civil ¶ 15.2.1 (1998).

[36] 3A O'Malley § 159.01.

Please answer the following question:

<u>QUESTION No. 1</u>

Do you find by a preponderance of the evidence that T&E and Timothy Roberts adopted and used the following tradenames and domain names prior to January 1, 2010 to identify T&E's goods and services and distinguish them from the goods and services of its competitors?

Answer "Yes" or "No."

(a)     With respect to "Roberts Investment Group"

Yes _____          No _____

(b)     With respect to "R [symbol of drilling rig] G".

Yes_____          No _____

(c)     With respect to "RobertsInvestmentGroupInfo.com".

Yes _____No _____

(d)     With respect to "TimRobertsOil&Gas.com".

Yes_____          No _____

GIVEN: _____

REFUSED: _____

GIVEN AS MODIFIED:

_____

U.S. DISTRICT JUDGE

REQUESTED JURY INSTRUCTION
NO. 5.

Instructions for Question Nos. 2 and 3

To determine whether a word, name, combination of letters, symbol, or any combination thereof is a protectible trademark, it must be determined into which of five categories a term falls: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful.[37]

A generic term refers to a particular genus or class of which an individual article is a member.[38] It describes the basic nature of an article.[39] Examples of generic terms are aspirin,[40] trampoline, yo-yo, and fish.[41]

A generic term can never become a protectible trademark.[42] Two generic words combined may, however, obtain protectible trademark status if the combination is descriptive, suggestive, arbitrary, or fanciful.[43]

---

[37] *Two Pesos Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992); *Sunbeam Prods. Inc. v. West Bend Co.*, 123 F.3d 246, 252 (5th Cir. 1997) (also holding that the test for trade dress protection is the same as the test for trademark protection, *see* n. 4); *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1537 (S.D. Tex. 1996), *aff'd as modified*, 155 F.3d 526 (5th Cir. 1998).

[38] *Texas Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 692 (5th Cir. 1992); *Union Nat'l Bank of Texas, Laredo v. Union Nat'l Bank of Texas, Austin*, 909 F.2d 839, 845 (5th Cir. 1990).

[39] *Texas Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 692 (5th Cir. 1992).

[40] *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1537 n.20 (S.D. Tex. 1996), *aff'd as modified*, 155 F.3d 526 (5th Cir. 1998).

[41] *Union Nat'l Bank of Texas, Laredo v. Union Nat'l Bank of Texas, Austin*, 909 F.2d 839, 845 (5th Cir. 1990).

[42] *Sunbeam Prods. Inc. v. West Bend Co.*, 123 F.3d 246, 252 (5th Cir. 1997); *Union Nat'l Bank of Texas, Laredo v. Union Nat'l Bank of Texas, Austin*, 909 F.2d 839, 844 (5th Cir. 1990); *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1537 (S.D. Tex. 1996), *aff'd as modified*, 155 F.3d 526 (5th Cir. 1998).

[43] *Texas Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 692 (5th Cir. 1992); *see also Service Merchandise v. Service Jewelry Stores, Inc.*, 737 F. Supp. 983, 999 (S.D. Tex. 1990).

1235433v3

A descriptive term identifies some characteristic or quality of an article or service, such as its function, appearance, dimensions, ingredients, the class of users of the goods or services or its end effect upon the user.[44] Examples of descriptive marks include "Alo" in connection with products containing gel of the aloe vera plant, and "Vision Center" in connection with a business offering optical goods and services.[45]

A descriptive term may achieve trademark status only if the term acquires "secondary meaning."[46] A descriptive term achieves secondary meaning and thus becomes a protectible trademark when the consuming public recognizes that the mark identifies a single source for a product.[47] More will be said later about secondary meaning.

A suggestive term suggests, rather than describes, some characteristic of the goods or services to which it is applied[48] and requires the consumer to exercise his imagination to reach a conclusion as to the nature of those goods or services.[49] For example, the term "Coppertone" has been held suggestive in connection with sunning products and "Penguin" is suggestive in connection with food freezers.[50]

---

[44] *Union Nat'l Bank of Texas, Laredo v. Union Nat'l Bank of Texas, Austin*, 909 F.2d 839, 845 (5th Cir. 1990); *Texas Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 692 (5th Cir. 1992).

[45] *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1537 n.20 (S.D. Tex. 1996), *aff'd as modified*, 155 F.3d 526 (5th Cir. 1998).

[46] *Two Pesos Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992); *Sunbeam Prods. Inc. v. West Bend Co.*, 123 F.3d 246, 252 (5th Cir. 1997); *Union Nat'l Bank of Texas, Laredo v. Union Nat'l Bank of Texas, Austin*, 909 F.2d 839, 844 (5th Cir. 1990); *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1537 (S.D. Tex. 1996), *aff'd as modified*, 155 F.3d 526 (5th Cir. 1998).

[47] *Sunbeam Prods. Inc. v. West Bend Co.*, 123 F.3d 246, 252 (5th Cir. 1997); *Texas Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 691 n.8 (5th Cir. 1992). *Compare with Zapata Corp. v. Zapata Trading Int'l, Inc.*, 841 S.W.2d 45, 47 (Tex.App.—Houston [14th Dist.] 1992, no writ); *KIKK, Inc. v. Montgomery County Broadcasting, Inc.*, 516 S.W.2d 494, 495 (Tex.Civ.App.—Beaumont 1974, no writ).

[48] *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1537 n.19 (S.D. Tex. 1996), *aff'd as modified*, 155 F.3d 526 (5th Cir. 1998).

[49] *Union Nat'l Bank of Texas, Laredo v. Union Nat'l Bank of Texas, Austin*, 909 F.2d 839, 845 (5th Cir. 1990).

[50] *Union Nat'l Bank of Texas, Laredo v. Union Nat'l Bank of Texas, Austin*, 909 F.2d 839, 845 (5th Cir. 1990); *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1537 n.19 (S.D. Tex. 1996), *aff'd as modified*, 155 F.3d 526 (5th Cir. 1998).

Suggestive terms require no proof of secondary meaning in order to be protected[51] because they are considered inherently distinctive.[52]

Arbitrary marks consist of words that are a part of everyday language but which are arbitrarily applied to a particular good or service.[53] They may also be common words used in unfamiliar ways.[54] Arbitrary marks require some imagination to apply them to the products in question.[55] For example, the following terms may be classified as arbitrary: "Blue Bell" for ice cream and "Apple" for personal computers.[56] Arbitrary terms require no proof of secondary meaning in order to be protected because they are considered inherently distinctive.[57]

Fanciful marks consist of a combination of words, letters, or other elements that are invented solely for the purpose of acting as a trademark.[58] Such a mark consists of words that do not exist in everyday language.[59] For example, the following terms may be classified as fanciful: "Kodak"[60] for photographic

---

[51] *Union Nat'l Bank of Texas, Laredo v. Union Nat'l Bank of Texas, Austin*, 909 F.2d 839, 844 (5th Cir. 1990); *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1537 (S.D. Tex. 1996), *aff'd as modified*, 155 F.3d 526 (5th Cir. 1998).

[52] *Two Pesos Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992); *Sunbeam Prods. Inc. v. West Bend Co.*, 123 F.3d 246, 252 (5th Cir. 1997).

[53] *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1537 n.19 (S.D. Tex. 1996), *aff'd as modified*, 155 F.3d 526 (5th Cir. 1998).

[54] *Union Nat'l Bank of Texas, Laredo v. Union Nat'l Bank of Texas, Austin*, 909 F.2d 839, 846 n.16 (5th Cir. 1990).

[55] *Union Nat'l Bank of Texas, Laredo v. Union Nat'l Bank of Texas, Austin*, 909 F.2d 839, 848 (5th Cir. 1990); *Service Merchandise v. Service Jewelry Stores, Inc.*, 737 F. Supp. 983, 998 (S.D. Tex. 1990).

[56] *Union Nat'l Bank of Texas, Laredo v. Union Nat'l Bank of Texas, Austin*, 909 F.2d 839, 844 (5th Cir. 1990); *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1537 n.19 (S.D. Tex. 1996), *aff'd as modified*, 155 F.3d 526 (5th Cir. 1998).

[57] *Two Pesos Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992); *Sunbeam Prods. Inc. v. West Bend Co.*, 123 F.3d 246, 252 (5th Cir. 1997); *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1537 (S.D. Tex. 1996), *aff'd as modified*, 155 F.3d 526 (5th Cir. 1998).

[58] *Union Nat'l Bank of Texas, Laredo v. Union Nat'l Bank of Texas, Austin*, 909 F.2d 839, 846 n.16 (5th Cir. 1990).

[59] *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1537 n.19 (S.D. Tex. 1996), *aff'd as modified*, 155 F.3d 526 (5th Cir. 1998).

[60] *Union Nat'l Bank of Texas, Laredo v. Union Nat'l Bank of Texas, Austin*, 909 F.2d 839, 845 (5th Cir. 1990).

1235433v3

supplies, "Exxon" for petroleum based products, and "Xerox" for photocopiers.[61] Like suggestive and arbitrary terms, fanciful terms are inherently distinctive and require no proof of secondary meaning in order to be protected.[62]

---

[61] *Union Nat'l Bank of Texas, Laredo v. Union Nat'l Bank of Texas, Austin*, 909 F.2d 839, 845 (5th Cir. 1990); *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1537 n.19 (S.D. Tex. 1996), *aff'd as modified*, 155 F.3d 526 (5th Cir. 1998).

[62] *Two Pesos Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992); *Sunbeam Prods. Inc. v. West Bend Co.*, 123 F.3d 246, 252 (5th Cir. 1997); *Union Nat'l Bank of Texas, Laredo v. Union Nat'l Bank of Texas, Austin*, 909 F.2d 839, 844 (5th Cir. 1990); *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1537 (S.D. Tex. 1996), *aff'd as modified*, 155 F.3d 526 (5th Cir. 1998).

If you answered "No" to each item in Question No. 1, please skip to Question No. 20. If you answered "Yes" to any item in Question No. 1, please answer the following question for those terms:

## QUESTION No. 2

Do you find from a preponderance of the evidence that the following terms are either suggestive, arbitrary, or fanciful?

Answer "Yes" or "No."

(a)   With respect to "Roberts Investment Group"

Yes _____          No _____

(b)   With respect to "R [symbol of drilling rig] G".

Yes_____No _____

(c)   With respect to "RobertsInvestmentGroupInfo.com".

Yes _____No _____

(d)   With respect to "TimRobertsOil&Gas.com".

Yes_____          No _____

If you answered "Yes" to each item in Question No. 2, please skip to Question No. 5. If you answered "No" to any item in Question No. 2, please answer the following question only for those terms:

<u>QUESTION No. 3</u>

Do you find from a preponderance of the evidence that the following terms are descriptive?

Answer "Yes" or "No."

(a)    With respect to "Roberts Investment Group"

Yes _____        No _____

(b)    With respect to "R [symbol of drilling rig] G".

Yes_____No _____

(c)    With respect to "RobertsInvestmentGroupInfo.com".

Yes _____No _____

(d)    With respect to "TimRobertsOil&Gas.com".

Yes_____        No _____

| GIVEN: _____ |
| REFUSED: _____ |
| GIVEN AS MODIFIED: |
| _____ |
| U.S. DISTRICT JUDGE |

REQUESTED JURY INSTRUCTION
NO. 6.

Instructions for Question No. 4

If you determine that the terms "Roberts Investment Group" and "R [symbol of drilling rig] G," are descriptive, you must consider if the mark has "secondary meaning."

A mark acquires secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective purchasers is not the good or service itself, but the identification of the good or service with a single source.[63] You may consider the following when you determine whether the terms "Roberts Investment Group" and "R [symbol of drilling rig] G," have achieved a secondary meaning:[64]

1.      whether the people who purchase the goods or services that bear the claimed marks associate those marks with the owner;

2.      to what degree and in what manner T&E and Timothy Roberts may have advertised under the claimed marks;

3.      whether T&E and Timothy Roberts successfully used these marks to increase the sales of its goods or services;

4.      the length of time and manner in which T&E and Timothy Roberts used the claimed marks;

5.      whether T&E's and Timothy Roberts' use of the claimed marks was exclusive;

6.      whether the Defendants Christopher Faulkner, Breitling Oil and Gas Corporation, Parker Hallam and Dustin Rodriguez a/k/a Michael Miller intentionally copied T&E's marks;

7.      whether the Defendants Defendants Christopher Faulkner, Breitling Oil and Gas Corporation, Parker Hallam and Dustin Rodriguez a/k/a Michael Miller's use of T&E's marks have led to actual confusion; and

8.      any other factors that bear on secondary meaning.

---

[63] Manual of Modern Jury Instructions, Ninth Circuit, Civil ¶ 15.4.9 (1998).
[64] *Id.*

If you answered "Yes" to each item in Question No. 2, please skip to Question No. 5. If you answered "No" to any item in Question No. 2, and "Yes" to any item in Question No. 3, please answer the following question only for those terms:

QUESTION No. 4

Do you find from a preponderance of the evidence that the following terms have acquired secondary meaning?

Answer "Yes" or "No."

(a)    With respect to "Roberts Investment Group"

Yes _____            No _____

(b)    With respect to "R [symbol of drilling rig] G".

Yes _____            No _____

(c)    With respect to "RobertsInvestmentGroupInfo.com".

Yes _____            No _____

(d)    With respect to "TimRobertsOil&Gas.com".

Yes _____            No _____

REQUESTED JURY INSTRUCTION
NO. 7.

Instructions on PLAINTIFF'S CLAIMS – LIABILITY
(Question Nos. 5 through 26)

Plaintiffs have alleged twelve different causes of action arising out of the Defendants' acts, which must be considered by you in this case. The causes of action can be identified as:

1.   trademark infringement and dilution under the Lanham Act;
2.   violations of the antipiracy/cybersquatting provisions of the Lanham Act;
3.   contributory and vicarious infringement against T&E and Roberts;
4.   contributory and vicarious dilution against T&E and Roberts;
5.   contributory and vicarious infringement against T&E and Roberts;
6.   contributory and vicarious dilution against T&E and Roberts;
7.   violation of Texas anti-dilution statute;
8.   federal and Texas common law tortuous interference with existing and prospective business relations;
9.   Texas common law unfair competition;
10.  Texas civil conspiracy;
11.  in the alternative to the above claims, that Breitling existed as the alter ego of Faulkner and the corporate veil of Breitling should be pierced and Faulkner be held individually liable; and
12.  in the alternative to the above claims, that Breitling existed as the alter ego of Faulkner and the corporate veil of Breitling should be pierced and Faulkner be held individually liable.

I will instruct you as to each of these causes of action.

| GIVEN: _____ |
| --- |
| REFUSED: _____ |
| GIVEN AS MODIFIED: |
| |
| |
| U.S. DISTRICT JUDGE |

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS – Page 23**

REQUESTED JURY INSTRUCTION
NO. 8.

## TRADEMARK INFRINGEMENT AND DILUTION UNDER THE LANHAM ACT

<u>Instructions for Question Nos. 5 through 14</u>

Under federal law, the Lanham Act (15 U.S.C. 1125), T&E has alleged that the Defendants have infringed and diluted its unregistered trademarks. T&E and Roberts have the burden of proving each of the following by a preponderance of the evidence:[65]

First:      T&E began its use of the terms "Roberts Investment Group" and R [symbol of drilling rig] G" prior to January 1, 2010 as a trademark for its goods and services;

Second:   Defendants Faulkner, Breitling, Hallam and Rodriguez began to use the marks in or after 2005 in an area where T&E was selling its goods and services;

Third:     Defendants' use of the marks was without the consent of T&E and Roberts;

Fourth:   The marks are inherently distinctive or have acquired secondary meaning; and

Fifth:      Defendants' use of the marks was likely to cause confusion among ordinary purchasers as to the source of the goods or services or Defendants' use of similar marks is so similar in appearance and meaning to T&E's marks that its use is likely to cause confusion among ordinary purchasers as to the source of the goods and services.

Ceasing the infringing and diluting activity does not allow a defendant to escape liability for its infringement.[66]

---

[65] 3A O'Malley § 159.21.
[66] *Elvis Presley Enters. Inc. v. Capece*, 141 F.3d 188, 198 (5th Cir. 1998).

The basic test of infringement is likelihood of confusion.[67] In determining whether there is or will be a likelihood of confusion caused by the use of the marks by both T&E, Roberts, and the Defendants, you may draw upon your common experience as citizens of the community. In addition to your general knowledge, you may also consider:[68]

1. the degree of similarity between the marks in question;
2. the intent of the Defendants in adopting the mark, that is, whether there was an intent to confuse;
3. the manner and method in which T&E, Roberts and Defendants used the marks;
4. the similarity between the goods or services in question;
5. the degree of care likely to be used by purchasers; and
6. other factors about the goods or services that would tend to reduce any tendency to confuse the purchaser as to the source of origin of the product.

In light of these considerations and your common experience, you must determine if ordinary consumers would be confused as to the origin of the goods or services upon encountering the mark as the respective parties have used it. No one factor or consideration is conclusive, but each aspect should be weighed in light of the total evidence presented at trial.[69]

A person who commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment is liable to the owner of a famous mark at any time after the owner's mark has become famous, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.[70] In determining whether T&E's marks are distinctive and famous, you may consider all relevant factors including:[71]

---

[67] *Joy Mfg. Co. v. CGM Value & Gauge Co.*, 730 F. Supp. 1387, 1394 (S.D. Tex. 1989); *see also Neles-Jamesbury, Inc. v. Valve Dynamics, Inc.*, 974 F. Supp. 964, 969 (S.D. Tex. 1997) (gravamen for trademark infringement is likelihood of confusion).

[68] 3A O'Malley § 159.25.

[69] *Id.*

[70] 15 U.S.C. § 1125(c)(1).

[71] 15 U.S.C. § 1125(c)(2)(a).

1. the duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties;
2. the amount, volume, and geographic extent of sales of goods and services offered under the mark;
3. the extent of actual recognition of the mark; and
4. whether the mark was registered.

Dilution by blurring is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark.[72] In determining whether a mark or trade name is likely to cause dilution by blurring, you may consider all relevant factors, including the following:[73]

1. the degree of similarity between the mark or trade name and the famous mark;
2. the degree of inherent or acquired distinctiveness of the famous mark;
3. the extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark;
4. the degree of recognition of the famous mark;
5. whether the user of the mark or trade name intended to create an association of the famous mark; and
6. any actual association between the mark or trade name and the famous mark.

Dilution by tarnishment is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark.[74]

---

[72] 15 U.S.C. § 1125(c)(2)(B).

[73] *Id.*

[74] 15 U.S.C. § 1125(c)(2)(C).

If you answered "Yes" to any item in either Question Nos. 2 or 4, please answer the following question for those terms:

<u>QUESTION No. 5</u>

Do you find by a preponderance of the evidence that Defendants' use of the following terms or substantially similar terms constitutes federal trademark *infringement*?

Answer "Yes" or "No."

(a)     With respect to "Roberts Investment Group"

Yes _____                    No _____

(b)     With respect to "R [symbol of drilling rig] G".

Yes_____No _____

(c)     With respect to "RobertsInvestmentGroupInfo.com".

Yes _____No _____

(d)     With respect to "TimRobertsOil&Gas.com".

Yes _____           No _____

If you answered "Yes" to any item in either Question Nos. 2 or 4, please answer the following question for those terms:

## QUESTION No. 6

Do you find by a preponderance of the evidence that Davis' use of the following terms or substantially similar terms constitutes federal trademark *infringement*?

Answer "Yes" or "No."

(a)     With respect to "Roberts Investment Group"

Yes _____           No _____

(b)     With respect to "R [symbol of drilling rig] G".

Yes_____           No _____

(c)     With respect to "RobertsInvestmentGroupInfo.com".

Yes _____           No _____

(d)     With respect to "TimRobertsOil&Gas.com".

Yes _____           No _____

If you answered "Yes" to any item in either Question Nos. 2 or 4, please answer the following question for those terms:

## QUESTION No. 7

Do you find by a preponderance of the evidence that Faulkner's use of the following terms or substantially similar terms constitutes federal trademark *infringement*?

Answer "Yes" or "No."


(a)     With respect to "Roberts Investment Group"

Yes _____              No _____


(b)     With respect to "R [symbol of drilling rig] G".


Yes_____              No _____


(c)     With respect to "RobertsInvestmentGroupInfo.com".

Yes _____              No _____


(d)     With respect to "TimRobertsOil&Gas.com".

Yes _____              No _____

If you answered "Yes" to any item in either Question Nos. 2 or 4, please answer the following question for those terms:

## QUESTION No. 8

Do you find by a preponderance of the evidence that Breitling's use of the following terms or substantially similar terms constitutes federal trademark *infringement*?

Answer "Yes" or "No."

(a)     With respect to "Roberts Investment Group"

Yes _____          No _____

(b)     With respect to "R [symbol of drilling rig] G".

Yes_____          No _____

(c)     With respect to "RobertsInvestmentGroupInfo.com".

Yes _____          No _____

(d)     With respect to "TimRobertsOil&Gas.com".

Yes _____          No _____

If you answered "Yes" to any item in either Question Nos. 2 or 4, please answer the following question for those terms:

<u>QUESTION No. 9</u>

Do you find by a preponderance of the evidence that Breitling's use of the following terms or substantially similar terms constitutes federal trademark *infringement*?

Answer "Yes" or "No."

(a)   With respect to "Roberts Investment Group"

Yes _____          No _____

(b)   With respect to "R [symbol of drilling rig] G".

Yes_____          No _____

(c)   With respect to "RobertsInvestmentGroupInfo.com".

Yes _____          No _____

(d)   With respect to "TimRobertsOil&Gas.com".

Yes _____          No _____

If you answered "Yes" to any item in either Question Nos. 2 or 4, please answer the following question for those terms:

<u>QUESTION No. 10</u>

Do you find by a preponderance of the evidence that Faulkner's use of the following terms or substantially similar terms constitutes federal trademark *dilution*?

Answer "Yes" or "No."

(a)     With respect to "Roberts Investment Group"

Yes _____                No _____


(b)     With respect to "R [symbol of drilling rig] G".


Yes_____                No _____

(c)     With respect to "RobertsInvestmentGroupInfo.com".

Yes _____                No _____


(d)     With respect to "TimRobertsOil&Gas.com".

Yes _____                No _____

If you answered "Yes" to any item in either Question Nos. 2 or 4, please answer the following question for those terms:

<u>QUESTION No. 11</u>

Do you find by a preponderance of the evidence that Breitling's use of the following terms or substantially similar terms constitutes federal trademark *dilution*?

Answer "Yes" or "No."


(a)     With respect to "Roberts Investment Group"

Yes _____          No _____


(b)     With respect to "R [symbol of drilling rig] G".


Yes_____          No _____

(c)     With respect to "RobertsInvestmentGroupInfo.com".

Yes _____          No _____


(d)     With respect to "TimRobertsOil&Gas.com".

Yes _____          No _____

If you answered "Yes" to any item in either Question Nos. 2 or 4, please answer the following question for those terms:

## QUESTION No. 12

Do you find by a preponderance of the evidence that Breitling's use of the following terms or substantially similar terms constitutes federal trademark *dilution*?

Answer "Yes" or "No."

(e)    With respect to "Roberts Investment Group"

Yes _____          No _____

(f)    With respect to "R [symbol of drilling rig] G".

Yes_____No _____

(g)    With respect to "RobertsInvestmentGroupInfo.com".

Yes _____No _____

(h)    With respect to "TimRobertsOil&Gas.com".

Yes _____          No _____

If you answered "Yes" to any item in either Question Nos. 2 or 4, please answer the following question for those terms:

QUESTION No. 13

Do you find by a preponderance of the evidence that Faulkner's use of the following terms or substantially similar terms constitutes federal trademark *dilution*?

Answer "Yes" or "No."

(i)     With respect to "Roberts Investment Group"

Yes _____          No _____

(j)     With respect to "R [symbol of drilling rig] G".

Yes_____          No _____

(k)     With respect to "RobertsInvestmentGroupInfo.com".

Yes _____          No _____

(l)     With respect to "TimRobertsOil&Gas.com".

Yes _____          No _____

If you answered "Yes" to any item in either Question Nos. 2 or 4, please answer the following question for those terms:

QUESTION No. 14

Do you find by a preponderance of the evidence that Breitling's use of the following terms or substantially similar terms constitutes federal trademark *dilution*?

Answer "Yes" or "No."

(m)   With respect to "Roberts Investment Group"

Yes _____          No _____

(n)   With respect to "R [symbol of drilling rig] G".

Yes_____No _____

(o)   With respect to "RobertsInvestmentGroupInfo.com".

Yes _____No _____

(p)   With respect to "TimRobertsOil&Gas.com".

Yes _____          No _____

GIVEN: _____

REFUSED: _____

GIVEN AS MODIFIED:

_____

_____

U.S. DISTRICT JUDGE

REQUESTED JURY INSTRUCTION
NO. 9.

**VIOLATIONS OF ANTIPIRACY PROVISIONS OF THE LANHAM ACT**

Instructions for Question No. 15

Also under the Lanham Act, T&E and Roberts have asserted that Defendants violated provisions of the cyberpiracy/cybersquatting prevention statute. Defendants are liable to T&E for cyberpiracy and/or cybersquatting if Defendants:[75]

1. had a bad faith intent to profit from a mark; and
2. registered, trafficked in, or used a domain name that –
   a. in the case of a distinctive mark, is identical or confusingly similar to the owner's mark; or
   b. in the case of a mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of the owner's mark.

In determining whether Defendants have bad faith intent, you may consider factors such as, but not limited to:[76]

1. the trademarks or other intellectual property rights of Defendants in the domain name;
2. the extent to which the domain name consists of the legal name of the Defendants or a name that is otherwise commonly used to identify Defendants
3. the Defendants prior use, if any, of the domain name in connection with the bona fide offering of goods or services;
4. the Defendants bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
5. the Defendants' intent to divert customers from T&E's online location to a site accessible under the domain name that could harm the goodwill represented in the mark, either for commercial gain or with the intent to

---

[75] 15 U.S.C. § 1125(d)(1)(A).

[76] 15 U.S.C. § 1125(d)(1)(B)(i).

tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

6. the Defendants' offer to transfer, sell, or otherwise assign the domain name to T&E and Roberts, the mark owner, or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of goods or services, or the Defendants' prior conduct indicating a pattern of such conduct;

7. the Defendants' provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the Defendants' prior conduct indicating a pattern of such conduct;

8. the Defendants' registration or acquisition of multiple domain names which the Defendants know are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties to this lawsuit; and

9. the extent to which the mark incorporated in the Defendants' domain name registration is or is not distinctive and famous.

Bad faith intent shall not be found in any case in which a person believes and has reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful, this is often referred to as the "safe harbor" provision of the cyberpiracy statute.[77] It is important for you to note, however, that a defendant who acts even partially in bad faith in registering a domain name is not entitled to benefit from the statute's safe harbor provision.[78] Therefore, if you find that Defendants knew they were registering a domain name bearing strong resemblance to T&E's marks, and Defendants did so at least in part with the idea of commercially profiting from that registration, including by depriving T&E of the economic benefits associated with their marks or trade names, Defendants are not entitled to benefit from the safe harbor provision.[79]

---

[77] 15 U.S.C. § 1125(d)(1)(B)(ii).

[78] *Virtual Works, Inc. v. Volkswagen of America, Inc.*, 238 F.3d 264, 270 (4th Cir. 2001).

[79] *Virtual Works, Inc. v. Volkswagen of America, Inc.*, 238 F.3d 264, 270 (4th Cir. 2001).

If you answered "Yes" to any item in either Question Nos. 2 or 4, please answer the following question for those terms:

## QUESTION No. 15

Do you find by a preponderance of the evidence that the registration of domain names using terms the same or substantially similar to T&E's trademarks was a violation of federal cyberpiracy/cybersquatting prevention statute?

Answer "Yes" or "No."

(a)    With respect to Faulkner

Yes _____          No _____

(b)    With respect to Breitling

Yes _____          No _____

GIVEN: _____

REFUSED: _____

GIVEN AS MODIFIED:

_____

_____

U.S. DISTRICT JUDGE

REQUESTED JURY INSTRUCTION
NO. 10.

**WILLFULNESS**[80]

Instructions for Question Nos. 16 and 17

If you decide that Defendants have committed acts of trademark infringement or unfair competition, you must determine whether such infringement was intentional. Infringement was intentional if it was voluntarily and willful and not because of accident or innocent reason.[81]

You must also determine if this case is exceptional.[82] The case is exceptional if Defendants acted willfully, maliciously, fraudulently, and deliberately.[83] The factors you may consider in determining if the Defendants acted willfully, maliciously, fraudulently, and deliberately, and in determining if this case is exceptional are the following:[84]

1. whether the Defendants acted in bad faith;

---

[80] If the Defendants' conduct was intentional the court must award treble damages. 15 U.S.C. § 1117; *Pebble Beach Co. v. Tour 18 I Ltd.*, 942 F. Supp. 1513, 1571 (S.D. Tex. 1996), *aff'd as modified*, 155 F.3d 526 (5th Cir. 1998). Also, if Defendants' infringement was willful, T&E is entitled to recover all of Defendants' profits from infringing sales regardless of whether the use of the marks was a causal factor in the sales. *Joy Mfg. Co. v. CGM Valve & Gauge Co.*, 730 F. Supp. 1387, 1395 (S.D. Tex. 1989).

[81] *Texas Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 689 n.4, 697 (5th Cir. 1992).

[82] In exceptional cases, the Court may award reasonable attorney fees to the prevailing party. 15 U.S.C. § 1117(a).

[83] *Pebble Beach Co. v. Tour 18 I Ltd.*, 942 F. Supp. 1513, 1571-72 (S.D. Tex. 1996), *aff'd as modified*, 155 F.3d 526 (5th Cir. 1998); *Buca di Bacco, Inc. v. Buca di Bacc', Inc.*, 828 F. Supp. 31, 32 (S.D. Tex. 1993).

[84] *Buca di Bacco, Inc. v. Buca di Bacc', Inc.*, 828 F. Supp. 31, 32 (S.D. Tex. 1993); *Texas Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 689, 697-98 (5th Cir. 1992) (citing *V.I.P. Foods, Inc. v. Vulcan Pet, Inc.*, 675 F.2d 1106, 1107 (10th Cir. 1982); *Pebble Beach Co. v. Tour 18 I Ltd.*, 942 F. Supp. 1513, 1572 (S.D. Tex. 1996), *aff'd as modified*, 155 F.3d 526 (5th Cir. 1998); *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 556 (5th Cir. 1998); *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1305 (5th Cir. 1997).

2. whether T&E and Roberts suffered damages;
3. whether T&E's marks were registered;
4. whether the Defendants knew of T&E's marks before the Defendants began using the marks;
5. whether the Defendants deliberately copied T&E's marks;
6. whether the Defendants had a good faith belief that they had a reasonable defense;
7. whether the Defendants knew at the time of their actions that they were violating the law;
8. whether the Defendants intended to sell to T&E's customers
9. whether the Defendants intended to deceive or confuse the public;
10. whether the Defendants adopted T&E's trademarks to benefit from T&E's reputation; and
11. whether the Defendants attempted to profit from their use of T&E's marks.

Although deliberate copying does not per se establish that a case is exceptional, "preying conduct" such as the intent to steal customers away from T&E would support a determination of exceptionality.[85]

---

[85] *Pebble Beach Co. v. Tour 18 I Ltd.*, 942 F. Supp. 1513, 1572 (S.D. Tex. 1996), *aff'd as modified*, 155 F.3d 526 (5th Cir. 1998) (citing *CJC Holdings v. Wright and Lato*, 979 F.2d 60, 65 (5th Cir. 1992)).

If you answered "Yes" to any item of Question Nos. 5 through 15, please answer the following question:

## QUESTION No. 16

Do you find by clear and convincing evidence that Defendants' unlawful acts of trademark infringement or unfair competition were intentional?

Answer "Yes" or "No."

(a)    With respect to Faulkner

Yes _____            No _____

(b)    With respect to Breitling

Yes _____            No _____

(c)    With respect to Hallam

Yes _____            No _____

(d)    With respect to Rodriguez

Yes _____            No _____

If you answered "Yes" to any item of Question Nos. 5 through 15, please answer the following question:

## QUESTION No. 17

Do you find by clear and convincing evidence that Defendants' unlawful acts of trademark infringement or unfair competition were willful, deliberate, malicious, or fraudulent?

Answer "Yes" or "No."

(a)     With respect to Faulkner

Yes _____          No _____

(b)     With respect to Breitling

Yes _____          No _____

(c)     With respect to Hallam

Yes _____          No _____

(d)     With respect to Rodriguez

Yes _____          No _____

GIVEN: _____

REFUSED: _____

GIVEN AS MODIFIED:

_____

_____

U.S. DISTRICT JUDGE

REQUESTED JURY INSTRUCTION
NO. 11.

## CONTRIBUTORY AND VICARIOUS INFRINGEMENT AND DILUTION

Instructions for Question Nos. 18 through 19

A person is liable for contributory trademark infringement by intentionally inducing or encouraging direct infringement.[86] A person is liable for vicarious infringement by profiting from direct infringement while declining to exercise a right to stop or limit the infringement.[87]

T&E has the burden of proving each of the following by a preponderance of the evidence:[88]

1. Defendants infringed the T&E's marks; and
2. The Defendants intentionally induced _____ to infringe T&E's marks.

---

[86] *Taylor Made Golf Co. v. MJT Consulting Group, LLC*, 265 F. Supp. 2d 732, 746 (N.D. Tex. 2003) ("a corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing the corporate veil.").

[87] *Taylor Made Golf Co. v. MJT Consulting Group, LLC*, 265 F. Supp. 2d 732, 746 (N.D. Tex. 2003).

[88] Manual of Modern Jury Instructions, Ninth Circuit, Civil ¶ 15.4.12 (1998).

If you answered "Yes" to any item in Question No. 5, please answer the following question:

## QUESTION No. 18

Do you find by a preponderance of the evidence that Defendants are contributory and vicariously liable for Defendants' *infringement* of T&E's trade names  and trademarks?

Answer "Yes" or "No."

(a)     With respect to Faulkner

Yes _____          No _____

(b)     With respect to Breitling

Yes _____          No _____

(c)     With respect to Hallam

Yes _____          No _____

(d)     With respect to Rodriguez

Yes _____          No _____

If you answered "Yes" to any item in Question No. 10, please answer the following question:

## QUESTION No. 19

Do you find by a preponderance of the evidence that Defendants are contributory and vicariously liable for Defendants' *dilution* of T&E's trade names and trademarks?

Answer "Yes" or "No."

(a)     With respect to Faulkner

Yes _____          No _____

(b)     With respect to Breitling

Yes _____          No _____

(c)     With respect to Hallam

Yes _____          No _____

(d)     With respect to Rodriguez

Yes _____          No _____

GIVEN: _____

REFUSED: _____

GIVEN AS MODIFIED:

_____

_____

U.S. DISTRICT JUDGE

REQUESTED JURY INSTRUCTION
NO. 12.

**VIOLATION OF TEXAS ANTI-DILUTION STATUTE**

Instructions for Question No. 20

T&E alleges that Defendants violated provisions of the Texas anti-dilution statute (Tex. Bus. & Comm. Code § 16.29). A mark owner may bring an action against a person who acts to injure a business reputation or to dilute the distinctive quality of a mark, regardless of whether there is competition between the parties or confusion as to the source of goods or services.[89] To demonstrate a violation under the anti-dilution statute, T&E must prove each of the following by a preponderance of the evidence:[90]

1. ownership of a distinctive mark; and
2. likelihood of confusion.

In order to determine the distinctiveness of a mark to show dilution, you may consider the following factors:[91]

1. whether the mark is arbitrary;
2. the scope of the Defendants' advertising and promotions;
3. the nature and extent of the T&E's business; and
4. the scope of T&E's reputation.

---

[89] Tex. Bus. & Comm. Code § 16.29.

[90] *Sefton v. Jew*, 201 F. Supp. 2d 730, 750 (W.D. Tex. 2001) (interpreting the Texas anti-dilution statute).

[91] *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1564-65 (S.D. Tex. 1996) (interpreting the Texas anti-dilution statute), *aff'd as modified*, 155 F.3d 526 (5th Cir. 1998).

If you answered "Yes" to any item in either Question Nos. 2 or 4, please answer the following question:

## QUESTION No. 20

Do you find by a preponderance of the evidence that Defendants violated the Texas anti-dilution statute?

Answer "Yes" or "No."

(a)     With respect to Faulkner

Yes _____          No _____

(b)     With respect to Breitling

Yes _____          No _____

(c)     With respect to Hallam

Yes _____          No _____

(d)     With respect to Rodriguez

Yes _____          No _____

GIVEN: _____

REFUSED: _____

GIVEN AS MODIFIED:

_____

_____

U.S. DISTRICT JUDGE

REQUESTED JURY INSTRUCTION
NO. 13.

**TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE
BUSINESS RELATIONS**

Instructions for Question Nos. 21 through 22

T&E alleges that Defendants interfered with existing and prospective business relations. To prove tortious interference with existing business relations, T&E must prove each of the following by a preponderance of the evidence:[92]

1. T&E and Roberts had a valid contract;
2. Defendants willfully and intentionally interfered with the contract;
3. the interference proximately caused injury to T&E and Roberts; and
4. T&E and Roberts incurred actual damage or loss.

To prove tortious interference with prospective business relations, T&E and Roberts must prove each of the following by a preponderance of the evidence:[93]

1. there was a reasonable probability that T&E and Roberts would have entered into a business relationship with a third person;
2. the Defendants intentionally interfered with the relationship;
3. the Defendants' conduct was independently tortious or unlawful (if you find that Defendants infringed on T&E's marks, that constitutes independent or unlawful conduct);[94]
4. the interference proximately caused T&E and Roberts' injury; and
5. T&E and Roberts suffered actual damage or loss.

---

[92] Texas Pattern Jury Charge 106.1 (comment); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002); *Prudential Insurance Co. of America v. Financial Review Servs. Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

[93] Texas Pattern Jury Charge 106.2; *Wal-Mart Stores v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001).

[94] *Wal-Mart Stores v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001) (noting that independently tortious merely means that conduct would be actionable under a recognized tort).

Interference is intentional if committed with the desire to interfere with the business relationship or with the belief that interference is substantially certain to result.[95]

---

[95] Texas Pattern Jury Charge 106.1, 106.2.

Please answer the following question:

<u>QUESTION No. 21</u>

Do you find by a preponderance of the evidence that Defendants intentionally interfered with *existing* business relations of T&E and Roberts?

Answer "Yes" or "No."

(a)     With respect to Faulkner

Yes _____          No _____

(b)     With respect to Breitling

Yes _____          No _____

(c)     With respect to Hallam

Yes _____          No _____

(d)     With respect to Rodriguez

Yes _____          No _____

Please answer the following question:

## QUESTION No. 22

Do you find by a preponderance of the evidence that Defendants intentionally interfered with *prospective* business relations of T&E and Roberts?

Answer "Yes" or "No."

(a)    With respect to Faulkner

Yes _____         No _____

(b)    With respect to Breitling

Yes _____         No _____

(c)    With respect to Hallam

Yes _____         No _____

(d)    With respect to Rodriguez

Yes _____         No _____

| | |
|---|---|
| GIVEN: _____ | |
| REFUSED: _____ | |
| GIVEN AS MODIFIED: | |
| _____ | |
| _____ | |
| U.S. DISTRICT JUDGE | |

REQUESTED JURY INSTRUCTION
NO. 14.

## UNFAIR COMPETITION

Instructions for Question No. 23

T&E and Roberts also assert a cause of action for unfair competition against Defendants for the infringing use of the relevant trademarks. The governing standard for unfair competition under Texas common law is likelihood of confusion.[96] To prove unfair competition, T&E and Roberts must prove each of the following by a preponderance of the evidence:[97]

1. there is a likelihood of confusion;
2. created by Defendants use of the trademarks; and
3. in connection with the sale of goods or services.

In determining whether there is or will be a likelihood of confusion caused by the use of the marks by either T&E, Roberts, and the Defendants, you may draw upon your common experience as citizens of the community. In addition to your general knowledge, you may also consider:[98]

1. the degree of similarity between the marks in question;
2. the intent of the Defendants in adopting the mark, that is, whether there was an intent to confuse;
3. the manner and method in which T&E and Roberts and Defendants used the marks;
4. the similarity between the goods or services in question;
5. the degree of care likely to be used by purchasers; and

---

[96] *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 663-64 n.1 (5th Cir. 2000).

[97] *All American Builders, Inc. v. All American Siding of Dallas, Inc.*, 991 S.W.2d 484, 488 (Tex.App.—Fort Worth 1999, no pet.); *Thompson v. Thompson Air Conditioning and Heating, Inc.*, 884 S.W.2d 555, 558 (Tex.App.—Texarkana 1994, no writ); *see also Zapata Corp. v. Zapata Trading Int'l, Inc.*, 814 S.W.2d 45, 47 (Tex.App.—Houston [14th Dist.] 1992, no writ) ("common law trademark infringement action under Texas law presents no difference in issues than those under federal trademark infringement actions").

[98] 3A O'Malley § 159.25.

6. other factors about the goods or services that would tend to reduce any tendency to confuse the purchaser as to the source of origin of the product.

Please answer the following question:

<u>QUESTION No. 23</u>

Do you find by a preponderance of the evidence that Defendants used T&E's marks in such a way as to constitute unfair competition?

Answer "Yes" or "No."

(a)     With respect to Faulkner

Yes _____          No _____

(b)     With respect to Breitling

Yes _____          No _____

(c)     With respect to Hallam

Yes _____          No _____

(d)     With respect to Rodriguez

Yes _____          No _____

| |
|---|
| GIVEN: _____ |
| REFUSED: _____ |
| GIVEN AS MODIFIED: |
| |
| U.S. DISTRICT JUDGE |

REQUESTED JURY INSTRUCTION
NO. 15.

## CIVIL CONSPIRACY

<u>Instructions for Question No. 24</u>

T&E asserts that Defendants are liable for civil conspiracy for conspiring to trade off of and profit from T&E's marks. T&E alleges that although one Defendant may have been directly responsible for registering the domain names and infringing and/or cybersquatting on T&E's marks, there was a meeting of the minds between the Defendants, and therefore all are liable for an act taken by one Defendant in furtherance of the conspiracy.

A civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.[99] To prove civil conspiracy, T&E must prove each of the following by a preponderance of the evidence:[100]

1. the Defendant was a member of a combination of two or more persons;
2. the object of the combination was to accomplish either an unlawful purpose or a lawful purpose by unlawful means;
3. the members have a meeting of the minds on the object or course of action;
4. one of the members committed an unlawful, overt act to further the object or course of action; and
5. T&E suffered injury as a proximate result of the wrongful act.

To be part of a conspiracy, a Defendant and another person or persons must have had knowledge of, agreed to, and intended a common objective or course of action that resulted in the damages to T&E. Further, one or more persons involved in the conspiracy must have performed some act or acts to further the conspiracy.[101]

---

[99] *Firestone Steel Products Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996).
[100] *Chon Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005).
[101] Texas Pattern Jury Charge 109.1.

Please answer the following question:

## QUESTION No. 24

Do you find by a preponderance of the evidence that Defendants were part of a conspiracy that damaged T&E?

Answer "Yes" or "No."

(a)    With respect to Faulkner

Yes _____          No _____

(b)    With respect to Breitling

Yes _____          No _____

(c)    With respect to Hallam

Yes _____          No _____

(d)    With respect to Rodriguez

Yes _____          No _____

| | |
|---|---|
| GIVEN: _____ | |
| REFUSED: _____ | |
| GIVEN AS MODIFIED: | |
| | |
| _____ | |
| U.S. DISTRICT JUDGE | |

REQUESTED JURY INSTRUCTION
NO. 16.

**PLAINTIFF'S CLAIMS – DAMAGES (Questions 27 through 32)**

Instructions for Question Nos. 25 through 30

You should not interpret the fact that I am about to give you instructions about monetary awards as an indication in any way that I believe that Plaintiff should, or should not, win this case. It is your task to decide whether the Defendants are liable. I am instructing you on monetary awards only so that you will have guidance in the event you decide that Defendants are liable and that T&E is entitled to recovery money from Defendants.[104]

If you find that the Defendants are liable to the Plaintiff, then you must determine an amount that is fair compensation for all of the Plaintiff's damages. These damages are called compensatory damages. The purpose of compensatory damages is to make the Plaintiff whole – that is, to compensate the Plaintiff for the damage it has suffered.[105]

You may award compensatory damages only for injuries that the Plaintiff proves were proximately caused by the Defendants' allegedly wrongful conduct. The damages that you award must be fair compensation for all of the Plaintiff's damages, no more and no less. You should not award compensatory damages for speculative injuries, but only for injuries which the Plaintiff has actually suffered or that the Plaintiff is reasonably likely to suffer in the future.[106]

If you decide to award compensatory damages, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the Plaintiff prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.[107]

---

[104] *Fifth Circuit Pattern Jury Instructions* § 15.1.
[105] *Fifth Circuit Pattern Jury Instructions* § 15.2.
[106] *Id.*
[107] *Id.*

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts in evidence.[108]

You should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence:

A. Damages Accrued

If you find for T&E, it is entitled to recover an amount that will fairly compensate it for any damages it has suffered to date.[109]

B. Calculation of Future Damages

If you find that T&E is reasonably certain to suffer damages in the future from its injuries, then you should award it the amount you believe would fairly compensate it for such future damages.[110]

C. Reduction of Future Damages to Present Value

An award of future damages necessarily requires that payment be made now for a loss that Plaintiff will not actually suffer until some future date. If you should find that the Plaintiff is entitled to future damages then you must determine the present worth in dollars of such future damages.[111]

D. Punitive Damages

If you find that the Defendants are liable for the Plaintiff's injuries, you must award the Plaintiff the compensatory damages that it has proven. You also may award punitive damages, if the Plaintiff has proved that the Defendants acted with malice or willfulness or with callous and reckless indifference to the rights of others. One acts willfully or with reckless indifference to the rights of others when

---

[108] *Id.*
[109] *Fifth Circuit Pattern Jury Instructions* § 15.3.

[110] *Id.*
[111] *Id.*

he acts in disregard of a high and excessive degree of danger about which he knows or which would be apparent to a reasonable person in his condition.[112]

If you determine that the Defendants' conduct was so shocking and offensive as to justify an award of punitive damages, you may exercise your discretion to award those damages. In making any award of punitive damages, you should consider that the purpose of punitive damages is to punish a defendant for shocking conduct, and to deter the defendant and others from engaging in similar conduct in the future. The law does not require you to award punitive damages, you must use sound reason in setting the amount of the damages. The amount of an award of punitive damages must not reflect bias, prejudice, or sympathy toward any party. It should be presumed a plaintiff has been made whole by compensatory damages, so punitive damages should be awarded only if the defendant's misconduct, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence. You may consider the financial resources of the Defendants in fixing the amount of punitive damages and you may impose punitive damages against one or more of the Defendants, and not others, or against more than one Defendant in different amounts.[113]

To award punitive damages, you must determine if Defendants actions constitute aggravated conduct, that is: with the malice or gross negligence.[114] Malice means a specific intent to cause substantial injury or harm.[115] Gross negligence means an act or omission: which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme risk, considering the probability and magnitude of potential harm to others and of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.[116] You are instructed that, in order for you to find punitive damages, your answer to the question regarding the amount of such damages must be unanimous.[117]   An

---

[112] *Fifth Circuit Pattern Jury Instructions* § 15.13.

[113] *Id.*
[114] Tex. Civ. Prac. & Rem. Code §§ 41.001, *et. seq.*
[115] Tex. Civ. Prac. & Rem. Code §§ 41.001(7).
[116] Tex. Civ. Prac. & Rem. Code §§ 41.001(11).
[117] Tex. Civ. Prac. & Rem. Code § 41.003(e).

award of punitive damages must be specific as to a defendant, and each Defendant is liable only for the amount of the award made against that Defendant.[118]

In determining the amount of punitive damages, you should consider evidence relating to:[119]

1. the nature of the wrong;
2. the character of the conduct involved;
3. the degree of culpability of the wrongdoer;
4. the situation and sensibilities of the parties concerned;
5. the extent to which such conduct offends a public sense of justice and propriety; and
6. the net worth of the Defendants.

E. Multiple Claims – Multiple Defendants

You must not award compensatory damages more than once for the same injury. For example, if the Plaintiff prevails on two claims and establishes a dollar amount for its injuries, you must not award it any additional compensatory damages on each claim. The Plaintiff is only entitled to be made whole once, and may not recover more than it has lost. Of course, if different injuries are attributed to the separate claims, then you must compensate the Plaintiff fully for all its injuries.[120]

With respect to punitive damages, you may make separate awards on each claim that Plaintiff has established.[121]

You may impose damages on a claim solely upon the Defendant or Defendants that you find are liable on that claim. Although there are five Defendants in this case, it does not necessarily follow that if one is liable, all or any of the others are also liable. Each Defendant is entitled to fair, separate, and individual consideration of its case without regard to your decision as to the other

---

[118] Tex. Civ. Prac. & Rem. Code § 41.006.

[119] Tex. Civ. Prac. & Rem. Code 41.011.

[120] *Fifth Circuit Pattern Jury Instructions* § 15.14.

[121] *Id.*

Defendants.   If you find that only one Defendant is responsible for a particular injury, then you must award damages for that injury only against that Defendant.[122]

You may find that more than one Defendant is liable for a particular injury. If so, the Plaintiff is not required to establish how much of the injury was caused by each particular Defendant whom you find liable. Thus, if you conclude that the Defendants you find liable acted jointly, then you may treat them jointly for purposes of calculating damages. If you decide that two or more of the Defendants are jointly liable on a particular claim, then you may simply determine the overall amount of the damages for which they are liable, without determining individual percentages of liability.[123]

T&E and Roberts have the burden of proving damages by a preponderance of the evidence. In determining the amount of damages you should consider the following:[124]

1. injury to T&E's and Roberts' reputation;
2. injury to T&E and Roberts' goodwill, including injury to T&E and Roberts' general business reputation;
3. loss of T&E and Roberts' sales as a result of Defendants' infringements;
4. loss of T&E and Roberts' profits;
5. expense of preventing customers from being deceived and any related expenses;
6. cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement;
7. amount of Defendants' sales that constituted trademark infringement; and
8. any other factors that bear on T&E and Roberts' actual damages.

You may consider awarding T&E those profits Defendants made on sales based on the infringement.   T&E has the burden of showing the amount of

---

[122] *Id.*

[123] *Id.*

[124] Manual of Modern Jury Instructions, Ninth Circuit, Civil ¶ 15.6.2 (1998); JEROME GILSON, TRADEMARK PROTECTION AND PRACTICE § 8.08[2]; *see also* 15 U.S.C. § 1117(a) (plaintiff may recover any damages sustained). *See also Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1305 (5th Cir. 1997); *Pebble Beach Co. v. Tour 18 I Ltd.*, 942 F. Supp. 1513, 1571 (S.D. Tex. 1996), *aff'd as modified*, 155 F.3d 526 (5th Cir. 1998).

Defendants' total sales based on the infringement.[125] Defendants then have the burden of proving expenses that should be deducted from total sales.[126] These expenses include all costs incurred in producing the total sales based upon the infringement.[127] Profit is then determined by subtracting the expenses from the total sales.[128] If Defendants do not prove their expenses by a preponderance of the evidence, then profit is the total sales based upon the infringement proven by T&E and Roberts.[129]

In this case, T&E and Roberts is seeking, among other damages, the disgorgement of the Defendants' profits. In assessing an infringer's profits for trademark infringement, T&E and Roberts are only required to prove Defendants' sales; the Defendants must prove all elements of cost or deductions claimed. [130] In other words, T&E and Roberts must prove Defendants' gross sales, thereafter the Defendants bear the burden of demonstrating which of its total sales are not attributable to the infringing activity as well as any deductions for its overhead. [131]

You should note that this analysis does not impose an obligation on T&E and Roberts to first demonstrate that it actually lost sales to the Defendants, or that the Defendants' actions caused actual confusion in the marketplace in order for T&E and Roberts to recovery wrongfully obtained profits. [132]   Indeed, the burden is on the infringer

---

[125] 15 U.S.C. § 1117(a).

[126] *Id.*
[127] Manual of Modern Jury Instructions, Ninth Circuit, Civil ¶ 15.6.3 (1998).

[128] *Id.*
[129] *Joy Mfg. Co. v. CGM Valve & Gauge Co.*, 730 F. Supp. 1387, 1395 (S.D. Tex. 1989).

[130] 15 U.S.C. § 1117(a).

[131] 3 JEROME GILSON, TRADEMARK PROTECTION AND PRACTICE § 14.03[6][d] (citing 15 U.S.C. § 1117(a)); *Texas Tech. Univ. v. Spiegelberg*, 461 F. Supp. 2d 510, 526 (N.D. Tex. 2006 ("According to the plain meaning of the Act, the plaintiff is entitled to the full amount of the defendant's gross sales where the defendant has not produced any evidence of deductions."); *Wynn Oil, Co. v. American Way Service Corp.*, 943 F..2d 595, 606 (6th Cir. 1991) ("[B]oth common sense and the statute suggest that the burden of apportioning profits should be placed on defendants.").

[132] *Quick Tech., Inc. v. The Sage Group PLC*, 313 F.3d 338, 348 (5th Cir. 2002) (citing *Maltina Corp. v. Cawy Bottling Co., Inc.*, 613 F.2d 582, 585 (5th Cir. 1980) ("an accounting is proper even if the defendant and plaintiff are not in direct competition, and the defendants' infringement has not diverted sales from the plaintiff")); *Boston Professional Hockey Assoc., Inc. v. Dallas Cap & Emblem Manufacturing, Inc.*, 597 F.2d 71, 75 (5th Cir. 1979) (upholding award of actual damages and defendant's profits without quantifiable proof of lost sales because mere misappropriation of

to prove that any infringement had no cash value in sales made by them. [133] If Defendants' do not or cannot prove that profits are demonstrably not attributable to the unlawful use of T&E's marks, then the profits made on sales of goods or services using the infringing mark properly belong to the owner of the mark.[134] This may or may not result in a windfall to the mark owner T&E, where Defendants are unable to isolate the profits which are attributable to use of the infringing marks.[135] But to do otherwise would give the windfall to the wrongdoer. One who makes profits derived from the unlawful infringement of a mark belonging to another cannot relieve itself of its obligations to restore the profits to the rightful owner merely by showing that it is difficult to prove that the infringement had no cash value.[136] In the absence of Defendants proving that any profits are demonstrably not attributable to the unlawful use of T&E's marks, all profits should be deemed derived from the unlawful appropriation of the marks, and should be awarded to T&E.[137]

---

trademark deprived plaintiff of the economic benefits associated with plaintiff's property rights in the mark).

[133] *Mishawaka Rubber & Woolen Manufacturing Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206-207 (1942); *System Forward America, Inc., v. Martinez d/b/a Pop-A-Car-Open*, 129 Fed.Appx. 88, 89, 2005 U.S. App. LEXIS 6527 at 3 (5th Cir. 2005) (citing *Mishawaka*, the Fifth Circuit explained that the defendant "bore the burden of proving that his infringement did not result in his financial benefit.").

[134] *Mishawaka Rubber & Woolen Manufacturing Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206-207 (1942); *accord* System Forward America, Inc., v. Martinez d/b/a Pop-A-Car-Open, 129 Fed.Appx. 88, 89, 2005 U.S. App. LEXIS 6527 at 3 (5th Cir. 2005) (citing *Mishawaka*).

[135] *Mishawaka Rubber & Woolen Manufacturing Co. v. S.S. Kresge Co.*, 316 U.S. 203, 207 (1942) ; *accord* System Forward America, Inc., v. Martinez d/b/a Pop-A-Car-Open, 129 Fed.Appx. 88, 89, 2005 U.S. App. LEXIS 6527 at 3 (5th Cir. 2005) (citing *Mishawaka*).

[136] *Mishawaka Rubber & Woolen Manufacturing Co. v. S.S. Kresge Co.*, 316 U.S. 203, 207 (1942) ; *accord* System Forward America, Inc., v. Martinez d/b/a Pop-A-Car-Open, 129 Fed.Appx. 88, 89, 2005 U.S. App. LEXIS 6527 at 3 (5th Cir. 2005) (citing *Mishawaka*).

[137] *Mishawaka Rubber & Woolen Manufacturing Co. v. S.S. Kresge Co.*, 316 U.S. 203, 207 (1942) ; *accord* System Forward America, Inc., v. Martinez d/b/a Pop-A-Car-Open, 129 Fed.Appx. 88, 89, 2005 U.S. App. LEXIS 6527 at 3 (5th Cir. 2005) (citing *Mishawaka*).

If you answered "Yes" to any item in Question Nos. 5 through 24, please answer the following question:

## QUESTION No. 25

What monetary award has T&E and Roberts proven to be justified for trademark infringement and dilution; violation of antipiracy/cybersquatting provisions of federal law; special damages associated with the loss of goodwill resulting from Defendants' actions; loss of market value in T&E's marks and trade names; contributory and vicarious liability for infringement and dilution; violation of the Texas anti-dilution statute; tortious interference with existing and prospective business relations;  unfair competition, and/or civil conspiracy related to the trademarks at issue?

Answer in dollars and cents.

Answer:        $_____

If you answered "Yes" to any item in Question Nos. 5 through 14, please answer the following question:

<u>QUESTION No. 26</u>

What amount of Defendants' profits would fully compensate T&E and Roberts for Defendants' acts of trademark infringement?

Answer in dollars and cents.

Answer:      $_____

If you answered "Yes" to any item in Question No. 15, please answer the following question:

QUESTION No. 27

What amount of Defendants' profits would fully compensate T&E and Roberts for Defendants' violations of federal antipiracy/cybersquatting statute?

Answer in dollars and cents.

Answer:     $_____

If you answered "Yes" any item in Question No. 23, please answer the following question:

<u>QUESTION No. 28</u>

What amount of Defendants' profits would fully compensate T&E and Roberts for Defendants' acts of unfair competition?

Answer in dollars and cents.

Answer:        $_____

If you answered "Yes" to any item in Question Nos. 20 through 24 and if you awarded any damages in Question No. 27, please answer the following question:

QUESTION No. 29

Has T&E and Roberts proven by clear and convincing evidence that the following Defendants acted with malice, or with gross negligence?

Answer "Yes" or "No."

    (e)    With respect to Faulkner

        Yes _____        No _____

    (f)    With respect to Breitling

        Yes _____        No _____

    (g)    With respect to Hallam

        Yes _____        No _____

    (h)    With respect to Rodriguez

        Yes _____        No _____

3

If you answered "Yes" to any item in Question No. 29, please answer the following question:

<u>QUESTION No. 30</u>

By what amount, if any, should the damages awarded in Question No. 25 be increased for punitive damages?

Answer in dollars and cents.

(a)    With respect to Faulkner

Yes _____            No _____

(b)    With respect to Breitling

Yes _____            No _____

(c)    With respect to Hallam

Yes _____            No_____

(d)    With respect to Hallam

Yes_____       No_____


Answer:      $_____

REQUESTED JURY INSTRUCTION
NO. 17.
Instructions on DEFENDANTS' COUNTER CLAIMS – LIABILITY
(Question Nos. 31 through 64)

Plaintiffs have alleged three different causes of action arising out of the Defendants' acts, which must be considered by you in this case. The causes of action can be identified as:

1. defamation;
2. libel; and
3. slander per se

Defendants have asserted the following affirmative defenses to Plaintiffs' claims:

1. truth;
2. substantial truth;
3. standing;
4. unclean hands;
5. the alleged statement's ambiguity;
6. the alleged statement's failure to qualify as defamation per se, libel per se, or slander per se; and
7. Defendants' fault.

I will instruct you as to each of these causes of action and defenses.

GIVEN: _____

REFUSED: _____

GIVEN AS MODIFIED:

_____

U.S. DISTRICT JUDGE

REQUESTED JURY INSTRUCTION
NO. 18.

**DEFAMATION, LIBEL AND SLANDER PER SE**

<u>Instructions for Question Nos. 31 through 64</u>

Plaintiffs have asserted a claim of defamation against the Defendants. In order to maintain a cause of action for defamation, Plaintiffs must prove the following by a preponderance of the evidence:[138]

1. Defendants published a statement;
2. that was defamatory toward Plaintiffs;
3. while acting with negligence regarding the truth of the statement.

A libel is a defamation expressed in written or other graphic form that tends to injure a person's reputation and thereby expose the person to hatred, contempt, ridicule, or financial injury; or to impeach any person's honesty, integrity, virtue, or reputation or to publish the natural defects of anyone and thereby expose the person to public hatred, ridicule, or financial injury.[139]

A statement is considered slander per se if it falls within one of the following four categories of per se defamatory speech:[140]

1. injures a person in its office, profession, or occupation;
2. falsely charges a person with the commission of a crime punishable by imprisonment;
3. a statement that imputes that a person presently has a loathsome disease; and
4. a statement that imputes sexual misconduct.

Statements are slanderous per se under Texas law if they are so obviously harmful to the person harmed that no proof of their injurious effect is necessary.[141]

---

[138] *WFAA-TV v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).
[139] Tex. Civ. Prac. & Rem. Code § 73.001.
[140] *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex.App.—Waco 2005, no pet.).
[141] *Estate of Martineau v. ARCO Chemical Co.*, 203 F.3d 904, 914 (5th Cir. 2000).

Defendants assert the affirmative defense of truth. To prove an action for defamation, a statement must be published and that statement must be false; a statement incapable of being proved true or false cannot be the basis of a defamation action.[142] Thus, if the statement alleged to be defamation was true, there is no defamation by law.

Defendants assert the affirmative defense of substantial truth. A statement is not considered false unless it would have a different effect on the mind of the average listener than a true statement would.[143] Thus, if the statement alleged to be defamation was substantially true, there is no defamation by law.

Defendants assert the affirmative defense of standing. To maintain a defamation action, the statement must refer to the plaintiff.[144] Thus, if the statement alleged to be defamation did not refer to any particular Plaintiffs, there is no defamation to that Plaintiffs by law.

Defendants assert the affirmative defense of unclean hands. The doctrine of unclean hands requires that one who comes to court seeking equity must come with "clean hands" – or having acted fairly and without fraud or deceit regarding the issue in controversy.[145] Thus, if Plaintiffs are deemed to have unclean hands, there is no defamation by law.

Defendants assert the affirmative defense of the alleged statement's ambiguity. For a statement to be actionable in defamation, it must expressly or impliedly assert facts that are objectively verifiable.[146] Thus, if the statement alleged to be defamation was ambiguous, there is no defamation by law.

Defendants assert the affirmative defense of the alleged statement's failure to qualify as defamation/libel/slander per se. Statements only qualify as slanderous per se under Texas law if they are so obviously harmful to the person harmed that

---

[142] *Harvest House Publ'rs v. Local Church*, 190 S.W.3d 204, 211-12 (Tex.App.—Houston [1st Dist.] 2006, pet. ref'd).

[143] *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991).

[144] *Newspapers, Inc. v. Matthews*, 339 S.W.2d 890, 893 (Tex. 1960).

[145] *Precision Instr. Mfg. v. Automotive Maint. Mach. Co.*, 324 U.S. 806, 814-15 (1945).

[146] *Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002) (adopting the Supreme Court test in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990)).

no proof of their injurious effect is necessary.[147] Thus, if the statement alleged to be defamation does not qualify as defamation per se, there is no slander per se by law.

Defendants assert the affirmative defense of the Plaintiffs' fault. If Plaintiffs own acts or omissions caused or contributed to its injury, Defendants are partially responsible for the injury. Thus, if Plaintiffs were at fault for any portion of the statement alleged to be defamation, Plaintiffs bear proportionate responsibility for any injury that resulted.

---

[147] *Estate of Martineau v. ARCO Chemical Co.*, 203 F.3d 904, 914 (5th Cir. 2000).

1235433v3

Please answer the following question:

## QUESTION No. 31

Do you find by a preponderance of the evidence that Breitling published a statement?

Answer "Yes" or "No."

Yes _____          No _____

Please answer the following question:

QUESTION No. 32

Do you find by a preponderance of the evidence that Faulkner published a statement?

Answer "Yes" or "No."

Yes _____          No _____

Please answer the following question:

## QUESTION No. 33

Do you find by a preponderance of the evidence that Breitling published a statement?

Answer "Yes" or "No."

Yes _____          No _____

Please answer the following question:

<u>QUESTION No. 34</u>

Do you find by a preponderance of the evidence that Hallam published a statement?

Answer "Yes" or "No."

Yes _____          No _____

Please answer the following question:

## QUESTION No. 35

Do you find by a preponderance of the evidence that Rodriguez published a statement?

Answer "Yes" or "No."

Yes _____          No _____

If you answered "No" to Question No. 31, please skip to the Final Remarks. If you answered "Yes" to Question No. 31, please answer the following question:

<u>QUESTION No. 36</u>

Do you find by a preponderance of the evidence that Faulkner's alleged published statement was defamatory?

Answer "Yes" or "No."

Yes _____          No _____

If you answered "No" to Question No. 31, please skip to the Final Remarks. If you answered "Yes" to Question No. 31, please answer the following question:

QUESTION No. 37

Do you find by a preponderance of the evidence that Breitling's alleged published statement was defamatory?

Answer "Yes" or "No."

Yes _____        No _____

If you answered "No" to Question No. 31, please skip to the Final Remarks. If you answered "Yes" to Question No. 31, please answer the following question:

## QUESTION No. 38

Do you find by a preponderance of the evidence that Hallam's alleged published statement was defamatory?

Answer "Yes" or "No."

Yes _____          No _____

If you answered "No" to Question No. 31, please skip to the Final Remarks.
If you answered "Yes" to Question No. 31, please answer the following question:

<u>QUESTION No. 39</u>

Do you find by a preponderance of the evidence that Rodriguez's alleged published statement was defamatory?

Answer "Yes" or "No."

Yes _____          No _____

If you answered "No" to Question No. 33, please skip to the Final Remarks. If you answered "Yes" to Question No. 33, please answer the following question:

QUESTION No. 40

Do you find by a preponderance of the evidence that Faulkner acted with negligence regarding the truth of the alleged statement?

Answer "Yes" or "No."

Yes _____          No _____

If you answered "No" to Question No. 33, please skip to the Final Remarks. If you answered "Yes" to Question No. 33, please answer the following question:

<u>QUESTION No. 41</u>

Do you find by a preponderance of the evidence that Breitling acted with negligence regarding the truth of the alleged statement?

Answer "Yes" or "No."

Yes _____          No _____

If you answered "No" to Question No. 33, please skip to the Final Remarks. If you answered "Yes" to Question No. 33, please answer the following question:

<u>QUESTION No. 42</u>

Do you find by a preponderance of the evidence that Hallam acted with negligence regarding the truth of the alleged statement?

Answer "Yes" or "No."

Yes _____          No _____

If you answered "No" to Question No. 33, please skip to the Final Remarks. If you answered "Yes" to Question No. 33, please answer the following question:

<u>QUESTION No. 43</u>

Do you find by a preponderance of the evidence that Rodriguez acted with negligence regarding the truth of the alleged statement?

Answer "Yes" or "No."

Yes _____          No _____

If you answered "No" to Question No. 34, please skip to the Final Remarks.
If you answered "Yes" to Question No. 34, please answer the following question:

<u>QUESTION No. 44</u>

Do you find by a preponderance of the evidence that Faulkner is liable to T&E for libel?

Answer "Yes" or "No."

Yes _____          No _____

If you answered "No" to Question No. 34, please skip to the Final Remarks. If you answered "Yes" to Question No. 34, please answer the following question:

<u>QUESTION No. 45</u>

Do you find by a preponderance of the evidence that Breitling is liable to T&E for libel?

Answer "Yes" or "No."

Yes _____          No _____

If you answered "No" to Question No. 34, please skip to the Final Remarks. If you answered "Yes" to Question No. 34, please answer the following question:

<u>QUESTION No. 46</u>

Do you find by a preponderance of the evidence that Hallam is liable to T&E for libel?

Answer "Yes" or "No."

Yes _____          No _____

If you answered "No" to Question No. 34, please skip to the Final Remarks. If you answered "Yes" to Question No. 34, please answer the following question:

<u>QUESTION No. 47</u>

Do you find by a preponderance of the evidence that Rodriguez is liable to T&E for libel?

Answer "Yes" or "No."

Yes _____        No _____

If you answered "No" to Question No. 34, please skip to the Final Remarks. If you answered "Yes" to Question No. 34, please answer the following question:

<u>QUESTION No. 48</u>

Do you find by a preponderance of the evidence that Faulkner is liable to Roberts for libel?

Answer "Yes" or "No."

Yes _____          No _____

If you answered "No" to Question No. 34, please skip to the Final Remarks. If you answered "Yes" to Question No. 34, please answer the following question:

<u>QUESTION No. 49</u>

Do you find by a preponderance of the evidence that Breitling is liable to Roberts for libel?

Answer "Yes" or "No."

Yes _____          No _____

If you answered "No" to Question No. 34, please skip to the Final Remarks. If you answered "Yes" to Question No. 34, please answer the following question:

<u>QUESTION No. 50</u>

Do you find by a preponderance of the evidence that Hallam is liable to Roberts for libel?

Answer "Yes" or "No."

Yes _____          No _____

If you answered "No" to Question No. 34, please skip to the Final Remarks. If you answered "Yes" to Question No. 34, please answer the following question:

## QUESTION No. 51

Do you find by a preponderance of the evidence that Rodriguez is liable to Roberts for libel?

Answer "Yes" or "No."

Yes _____        No _____

If you answered "No" to Question No. 35, please skip to the Final Remarks. If you answered "Yes" to Question No. 35, please answer the following question:

## QUESTION No. 52

Do you find by a preponderance of the evidence that Faulkner is liable to T&E for slander per se?

Answer "Yes" or "No."

Yes _____          No _____

If you answered "No" to Question No. 35, please skip to the Final Remarks. If you answered "Yes" to Question No. 35, please answer the following question:

<u>QUESTION No. 53</u>

Do you find by a preponderance of the evidence that Breitling is liable to T&E for slander per se?

Answer "Yes" or "No."

Yes _____          No _____

If you answered "No" to Question No. 35, please skip to the Final Remarks. If you answered "Yes" to Question No. 35, please answer the following question:

<u>QUESTION No. 54</u>

Do you find by a preponderance of the evidence that Hallam is liable to T&E for slander per se?

Answer "Yes" or "No."

Yes _____          No _____

If you answered "No" to Question No. 35, please skip to the Final Remarks. If you answered "Yes" to Question No. 35, please answer the following question:

<u>QUESTION No. 55</u>

Do you find by a preponderance of the evidence that Rodriguez is liable to T&E for slander per se?

Answer "Yes" or "No."

Yes _____          No _____

If you answered "No" to Question No. 35, please skip to the Final Remarks. If you answered "Yes" to Question No. 35, please answer the following question:

## QUESTION No. 56

Do you find by a preponderance of the evidence that Faulkner is liable to Roberts for slander per se?

Answer "Yes" or "No."

Yes _____        No _____

If you answered "No" to Question No. 35, please skip to the Final Remarks. If you answered "Yes" to Question No. 35, please answer the following question:

<u>QUESTION No. 57</u>

Do you find by a preponderance of the evidence that Breitling is liable to Roberts for slander per se?

Answer "Yes" or "No."

Yes _____          No _____

If you answered "No" to Question No. 35, please skip to the Final Remarks. If you answered "Yes" to Question No. 35, please answer the following question:

<u>QUESTION No. 58</u>

Do you find by a preponderance of the evidence that Hallam is liable to Roberts for slander per se?

Answer "Yes" or "No."

Yes _____          No _____

If you answered "No" to Question No. 35, please skip to the Final Remarks. If you answered "Yes" to Question No. 35, please answer the following question:

<u>QUESTION No. 59</u>

Do you find by a preponderance of the evidence that Rodriguez is liable to Roberts for slander per se?

Answer "Yes" or "No."

Yes _____          No _____

If you answered "No" to Question No. 36, please skip to the Final Remarks. If you answered "Yes" to any of Question Nos. 35 through 36, please answer the following question:

## QUESTION No. 60

Do you find by a preponderance of the evidence that Faulkner has proven any of the following affirmative defenses:

Answer "Yes" or "No."

(a)     With respect to Truth

Yes _____          No _____

(b)     With respect to Substantial Truth

Yes _____          No _____

(c)     With respect to Standing

Yes _____          No _____

(d)     With respect to Defendants' Unclean Hands

Yes _____          No _____

(e)     With respect to the alleged statement's Ambiguity

Yes _____          No _____

(f)     With respect to the alleged statement's Failure to Qualify as Defamation/Libel/Slander per se

Yes _____          No _____

(g)     With respect to Plaintiffs' Fault

Yes _____          No _____

If you answered "No" to Question No. 36, please skip to the Final Remarks. If you answered "Yes" to any of Question Nos. 35 through 36, please answer the following question:

## QUESTION No. 61

Do you find by a preponderance of the evidence that Breitling has proven any of the following affirmative defenses:

Answer "Yes" or "No."

(a)     With respect to Truth

        Yes _____          No _____

(b)     With respect to Substantial Truth

        Yes _____          No _____

(c)     With respect to Standing

        Yes _____          No _____

(d)     With respect to Defendants' Unclean Hands

        Yes _____          No _____

(e)     With respect to the alleged statement's Ambiguity

        Yes _____          No _____

(f)     With respect to the alleged statement's Failure to Qualify as Defamation/Libel/Slander per se

        Yes _____          No _____

(g)     With respect to Plaintiffs' Fault

Yes _____          No _____

If you answered "No" to Question No. 36, please skip to the Final Remarks. If you answered "Yes" to any of Question Nos. 35 through 36, please answer the following question:

## QUESTION No. 62

Do you find by a preponderance of the evidence that Hallam has proven any of the following affirmative defenses:

Answer "Yes" or "No."

(a)     With respect to Truth

Yes _____          No _____

(b)     With respect to Substantial Truth

Yes _____          No _____

(c)     With respect to Standing

Yes _____          No _____

(d)     With respect to Defendants' Unclean Hands

Yes _____          No _____

(e)     With respect to the alleged statement's Ambiguity

Yes _____          No _____

(f)     With respect to the alleged statement's Failure to Qualify as Defamation/Libel/Slander per se

Yes _____          No _____

(g)     With respect to Plaintiffs' Fault

Yes _____          No _____

If you answered "No" to Question No. 36, please skip to the Final Remarks. If you answered "Yes" to any of Question Nos. 35 through 36, please answer the following question:

## QUESTION No. 63

Do you find by a preponderance of the evidence that Rodriguez has proven any of the following affirmative defenses:

Answer "Yes" or "No."

(a)     With respect to Truth

Yes _____          No _____

(b)     With respect to Substantial Truth

Yes _____          No _____

(c)     With respect to Standing

Yes _____          No _____

(d)     With respect to Defendants' Unclean Hands

Yes _____          No _____

(e)     With respect to the alleged statement's Ambiguity

Yes _____          No _____

(f)     With respect to the alleged statement's Failure to Qualify as Defamation/Libel/Slander per se

Yes _____          No _____

(g)     With respect to Plaintiffs' Fault

Yes _____          No _____

If you answered "No" to Question No. 34, please skip to the Final Remarks. Also, if you answered "Yes" to any item in Question No. 37, please skip to the Final Remarks. Only if you answered "No" to items (a) through (f) and "Yes" to item (g) in Question No. 37, please answer the following question:

<u>QUESTION No. 64</u>

What percentage proportional responsibility do you find:

      Answer as a percentage:

      (a)     With respect to Breitling       _____%

      (b)     With respect to Faulkner       _____%

      (c)     With respect to Hallam       _____%

      (d)     With respect to Rodriguez       _____%

                               Total      100    %

GIVEN: _____

REFUSED: _____

GIVEN AS MODIFIED:

_____

_____
U.S. DISTRICT JUDGE

REQUESTED JURY INSTRUCTION
NO. 19.

<u>FINAL REMARKS</u>

Your verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree with the verdict. In other words, your verdict must be unanimous.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but only after an impartial consideration of all the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views, and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of the evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans. You are the judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

Upon retiring to the jury room you should first select one of your number to act as your foreperson who will preside over your deliberations and will be your spokesperson here in court. A copy of these instructions including the interrogatories has been prepared for your convenience. You will take the instructions with questions to the jury room and when you have reached a unanimous agreement as to each of the questions asked, you will have your foreperson fill in your answers, date and sign the form, and then return to the courtroom.

If, during your deliberations, you should desire to communicate with the Court, please reduce your message or question to writing signed by the foreperson, and pass the note to the marshal who will bring it to my attention. I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally. I caution you, however, with regard to any message or question you might send, that you should never state or specify how you are divided on any issue.

We, the jury, have unanimously agreed to the answers to the attached written questions, and return such answers in open court and under the instructions of this Court, as our verdict in this case.

_____
Foreperson

_____
Date

| GIVEN: _____ |
|---|
| REFUSED: _____ |
| GIVEN AS MODIFIED: |
| _____ |
| _____ |
| U.S. DISTRICT JUDGE |